State v. McDonald

---

STATE OF NORTH CAROLINA v. WILLIAM HOWARD McDONALD

No. 7415SC136

(Filed 20 March 1974)

1. Automobiles § 3— driving "after" license was revoked — defective verdict

Jury verdict finding defendant guilty of driving "after" his license was revoked rather than "while" his license was suspended or revoked was defective and should not have been accepted by the court.

State v. McDonald

2. **Automobiles § 117— speeding — sufficiency of evidence**

The trial court properly denied defendant's motion for nonsuit on a charge of driving 60 mph in a 45 mph zone where a highway patrolman testified he followed defendant for approximately one and a half miles and during such period defendant was driving between 68 mph and 70 mph in an area with a posted limit of 45 mph.

APPEAL by defendant from *Webb, Judge,* August 1973 Session of Superior Court held in ALAMANCE County.

This is a criminal action in which the defendant, William Howard McDonald, was charged in a warrant, proper in form, with driving a motor vehicle upon a public highway while his operator's license was suspended in violation of G.S. 20-28(a) and operating a motor vehicle on a public highway at a speed of 60 miles per hour in a 45 mile per hour zone.

The defendant was found guilty in District Court and he appealed to the Superior Court where he received a trial *de novo.* Upon arraignment the defendant entered a plea of not guilty; however, the jury returned a verdict of "Guilty of exceeding the posted speed limit and Guilty of driving after license was revoked." From a judgment imposing a prison sentence of 90 days for driving while his operator's license was suspended and 30 days for exceeding the posted speed limit the defendant appealed.

*Attorney General Robert Morgan and Associate Attorney E. Thomas Maddox, Jr., for the State.*

*John D. Xanthos for defendant appellant.*

HEDRICK, Judge.

[1] Defendant maintains that the verdict returned by the jury as to the charge of driving a motor vehicle on a public highway *while* his license was suspended was not responsive to the charge contained in the bill of indictment and that the verdict was insufficient to support the judgment. The following excerpt from the record discloses the objectionable portion of the jury's verdict:

"Upon returning to the courtroom after deliberating, upon inquiry as to whether the jury had reached a verdict, the foreman announced the following: Guilty of exceeding the posted speed limit and *Guilty of driving AFTER license was revoked.*" [Emphasis added.]

The immediate question posed by this verdict is the effect of the presence of the word *after* in the jury's verdict in lieu of the word *while* which appears in the bill of indictment. Justice Bobbitt, now C. J., was confronted with the distinction between these two words in *State v. Sossamon*, 259 N.C. 374, 130 S.E. 2d 638 (1963), and he determined that the warrant in that case (which contained the word "after") was fatally defective for failing to charge, in words or substance that the offense was committed *while* the license was suspended or revoked. Justice Bobbitt further stated that "[t]o constitute a violation of G.S. 20-28(a) such operation must occur *'while such license is suspended or revoked,'* that is, during the period of suspension or revocation." Therefore, the jury in the instant case has returned a verdict of guilty as to a non-criminal offense and thus, we must discuss the impact of such a faulty verdict upon the judgment.

As early as 1819 our Supreme Court recognized the principle that if the jury returned a verdict which was inconsistent with the bill of indictment then the jury should be directed by the court to reconsider such a verdict. *State v. Arrington*, 7 N.C. 571 (1819). In *State v. Hudson*, 74 N.C. 246 (1876), the defendant was charged in a proper bill of indictment with assault and battery and the jury returned a verdict of "guilty of shooting." The court commenting on this verdict stated that "the instrument contains no such charge, and the verdict standing by itself is therefore senseless; certainly it is not responsive to the indictment. The courts should never allow such . . . irresponsive verdicts to be recorded. They should have the jury to correct them, so as to be in conformity to law and to present an intelligent record." Similar language has appeared in many of the decisions of the appellate courts of this jurisdiction. See *State v. Sanders*, 280 N.C. 81, 185 S.E. 2d 158 (1971) ; *State v. Ingram*, 271 N.C. 538, 157 S.E. 2d 119 (1967) ; *State v. Whitaker*, 89 N.C. 472 (1883) ; *State v. Medlin*, 15 N.C. App. 434, 190 S.E. 2d 425 (1972).

In the instant case the trial court should not have received the jury's verdict; however, since the verdict was received, the verdict and judgment as to the offense of driving on a public highway while his license was suspended must be *ex mero motu* vacated, *State v. Ingram, supra;* 3 Strong, N. C. Index 2d, Criminal Law, § 127, p. 43.

State v. McDonald

Also this case provides an appropriate opportunity to reiterate the following cogent admonition contained within *State v. Medlin, supra,* at pp. 436-7:

"Had the verdict been simply 'guilty,' or 'guilty as charged,' it would have been sufficient to support the judgment, 'but when the jury undertakes to spell out its verdict . . . as in the instant case, it is essential that the spelling be correct.' "

"Trial judges would be well advised to exercise utmost care in accepting verdicts in order to assure that the verdict rendered accurately reflects the jury's findings as to defendant's guilt or innocence of the exact charge or charges for which he is being tried. This can best be accomplished if the jury is requested to respond with a simple answer of 'guilty,' or 'not guilty' to specifically formulated issues which contain clear and accurate statements of the charge or charges for which defendant is being tried."

[2] Having reached the result that the judgment must be arrested as to the charge of driving upon a public highway *while* his license was suspended or revoked, we are left to consider only the question of whether the trial court properly denied defendant's motion for nonsuit as to the speeding charge. The State introduced evidence which tended to establish that on 26 February 1973 defendant was traveling south on Highway 49 and that defendant was being followed by a highway patrolman. The patrolman testified that he followed defendant for approximately one and a half miles and during this period of surveillance the defendant was driving between sixty-eight and seventy miles an hour in an area which had a posted speed limit of forty-five miles per hour. Upon the patrolman's flashing his blue light, the defendant stopped his car and the officer approached defendant's car where he observed the defendant sitting behind the steering wheel. This evidence, when considered in the light most favorable to the State, is sufficient to withstand defendant's motion of nonsuit, *State v. Jackson,* 19 N.C. App. 749, 200 S.E. 2d 199 (1973).

The result is — in the case charging defendant with driving while his license was suspended the judgment is arrested. In the case charging defendant with speeding, we find no error.

Judges CAMPBELL and BALEY concur.