STATE OF NORTH CAROLINA v. HAYWOOD JAMES SANDERS

No. 123

(Filed 15 December 1971)

1. Burglary and Unlawful Breakings § 5; Larceny § 7; Safecracking —
   entering premises without permission — sufficiency of the evidence

   In a prosecution charging defendant with felonious breaking and
   entering, felonious theft, and safecracking and attempted safecracking,
   the State's evidence was sufficient to show that the defendant entered
   the premises described in the indictments without the permission of
   the owners.

2. Criminal Law § 168; Burglary and Unlawful Breakings § 6— instruc-
   tions — lapsus linguae — harmless error

   In a breaking and entering prosecution, the trial court's instruc-
   tion that the defendant entered the building "with the consent of the
   owner," rather than "without the consent of the owner," was a *lapsus
   linguae* and did not warrant a new trial.

3. Safecracking— verdict of "attempted safecracking"— sufficiency of
   verdict

   In a prosecution on indictment charging, in the statutory language,
   that the defendant "did unlawfully force open and attempt to force
   open a safe," a jury verdict finding the defendant guilty of "attempt-
   ed safecracking" was sufficient to authorize judgment on the verdict.
   G.S. 14-89.1.

4. Criminal Law § 124— the verdict — requisites and sufficiency

   A verdict should answer the issue raised by the State's charge of
   guilt contained in the indictment and the defendant's denial raised by
   his plea of not guilty.

5. Safecracking— use of expressions "safecracking" and "attempted safe-
   cracking"

   Trial court's instruction which used the expressions "safecrack-
   ing" and "attempted safecracking" as synonymous with the statutory
   language "force open" and "attempt to force open" a safe or vault
   was not erroneous. G.S. 14-89.1.

6. Safecracking— attempted safecracking — sufficiency of the evidence

   Removing the dial of a safe, sawing off its hinges, chiseling out
   a part of the concrete bottom of another safe and "smudging" it with
   a blowtorch constituted in law an "attempted safecracking."

7. Criminal Law § 126— unanimity of verdict — polling of jury — ac-
   ceptance of second poll

   The foreman announced that the jury found defendant guilty
   of safecracking, but one of the jurors who was polled announced his
   verdict as "guilty of attempted safecracking." The trial judge re-
   peated his instruction that the jury could find defendant guilty of

safecracking, guilty of attempted safecracking, or not guilty. The second poll of the jury resulted in the unanimous verdict of guilty of attempted safecracking. *Held:* The verdict of guilty of attempted safecracking was properly accepted by the trial judge.

APPEAL by defendant from *Brewer, J.,* March 1, 1971 Session, WAKE Superior Court.

The defendant, Haywood James Sanders, was tried in the superior court on two bills of indictment. In Case #71 CR 5308 the indictment, containing three counts, charged that on January 25, 1971, the defendant feloniously broke and entered a certain building occupied by Morris & Associates, Inc., located at 801 Fayetteville Street in Raleigh, where merchandise, chattels, money and other valuables were being kept, with intent on the part of the defendant to steal, take and carry away the foregoing described articles of personal property. Count No. 2 charged the felonious theft of certain listed property. A third count charged the defendant received the property knowing that it had been stolen.

In Case #71 CR 5309 the indictment charged that on January 25, 1971, the defendant unlawfully, wilfully and feloniously, by use of a hammer, an acetylene torch, prying bars, chisel and hacksaw did unlawfully force open and attempt to force open a safe and vault, the property of Morris & Associates, a corporation, said safe and vault being used for storing money and other valuables. The defendant was arraigned and through counsel entered pleas of not guilty. The two cases were consolidated for trial.

The State's evidence disclosed the building occupied by Morris & Associates, Inc., located at 801 Fayetteville Street in Raleigh, was forcibly broken into on the night of January 25, 1971, and some of the articles listed in Indictment #71 CR 5308 were stolen. The evidence disclosed that a small safe was kept in a first floor office and a large safe or vault was kept on the second floor; that at the time of the break-in the safes were closed, containing, as they usually did, money and other valuables.

The secretary of the corporation testified he closed the building at 5:30 p.m. on the date named in the indictment. He was called back to the building that night at 12:30 a.m. Two large glass windows had been broken. The two safes in the

building had been damaged. The larger safe or vault on the second floor had been opened, papers removed, and money had been taken from it. The small safe on the first floor had been turned upside down. The lock knob had been broken off, the bottom had been damaged, the metal had been torn, and part of the concrete bottom had been chiseled out. The dial had been removed and the hinges had been sawed off. The smaller safe had been blackened and burned by a blowtorch.

The State's witness, Felix Grissom, testified that he was employed by Raleigh Maintenance Company which was under contract to clean up the building. He entered at 11:30 p.m. "Upon entering the doorway, I turned left, went along a walkway, went down a series of steps . . . and entered this door from the first floor." He saw two men over the small safe which was upside down. The room lights were on. The witness got a good look at the one facing him. He returned the way he had entered, ran to an upstairs room from which he called the police. The two men apparently became alarmed and left the building before the police arrived. At the trial the witness positively identified the defendant as the one who was facing him over the small safe.

The defendant testified he lived with his father and two small nieces near 801 Fayetteville Street in Raleigh. On January 25, 1971, he was out with named companions on a drinking party. He returned to his home, went upstairs and went to bed at 10:30 p.m. and did not leave the house that night. His father testified the defendant came in between 10:30 and 11:00 o'clock and he did not leave again that night. The father admitted he did not have a watch, did not see a clock, and that his testimony about the time his son came in was "an estimate."

The court charged the jury:

"Now members of the jury, on the charge of safecracking I instruct you that if you are satisfied from the evidence beyond a reasonable doubt that this defendant did, by the use of tools, unlawfully force open a safe or attempt to force open a safe belonging to Morris Associates, Inc., which was used for storing money or valuables, it would be your duty to return a verdict of guilty of safecracking as charged.

If you are not so satisfied beyond a reasonable doubt as to each of those essentials, it would be your duty to

return a verdict of not guilty to the charge of safecracking."

\*     \*     \*     \*

" . . . (Y)ou will say by your verdict whether you find the defendant guilty of safecracking, or attempted safecracking, as charged in the bill of indictment; or not guilty; . . . "

When the jury returned to the courtroom the foreman announced the jury found the defendant guilty of housebreaking, not guilty of larceny, and guilty of safecracking. At the defendant's request the court ordered the jury polled. The jury verified its verdict as to housebreaking, but one juror announced his verdict was guilty of "attempted safecracking." After considerable discussion and instruction from the judge as to the permissible verdicts, the poll of the jury declared the verdict in #71 CR 5309 was guilty of attempted safecracking. Each member on the poll announced "attempted safecracking" was the verdict. The verdict was accepted by the court and recorded in its minutes. The defendant excepted.

The court imposed a prison sentence of 8 to 10 years on the housebreaking charge and 10 to 15 years on the attempted safecracking charge, the latter to begin at the expiration of the former. The defendant excepted, assigning errors.

*Robert Morgan, Attorney General by Millard R. Rich, Jr., Assistant Attorney General, for the State.*

*Carl C. Churchill, Jr., and Roger W. Smith for defendant appellant.*

HIGGINS, Justice.

We discuss here the defendant's assignments of error in the order of their chronology rather than the order in which they are discussed in the briefs.

[1] The defendant excepted to the court's refusal to dismiss all charges in the indictments on the ground the evidence did not support them. He contended the evidence failed to show the owners of the building did not give the defendant permission for the entrance. The evidence disclosed the building was occupied by a corporation. The secretary of the corporation testified: " . . . (W)e closed at regular hours, about 5:30 P.M. I next returned . . . that night about 12:15 A.M. when I was called

to come down to the shop and informed that we had had a break in. . . . Two of our large shop windows had been broken out, in the shop door . . . all the desks had been riffled or gone into and the safe had been damaged. . . . I was able to determine that a tape recorder was missing. . . . We lost two cameras. . . . (O)ne camera was worth about $200.00." Other property, including money, was also missing.

In addition to the foregoing evidence, the clean-up boy testified he discovered the defendant and a companion working on the small safe. They fled before the police arrived. He identified the defendant as the one who was facing him at the time both were working on the upturned safe on the first floor.

The defendant denied he was in the building. He testified he was at home in bed from about 10:30 p.m. until 9:00 the next morning. There is no evidence he had permission to be in the building. All the evidence shows a breaking. Two men, one of whom was the defendant, were discovered by Grissom working on the small safe. They fled before the officers arrived. " . . . (W)hen defendant relies upon some independent, distinct, substantive matter of exemption, immunity or defense, beyond the essentials of the legal definition of the offense itself, the onus of proof as to such matter is upon the defendant. . . . In such circumstances, a defendant charged with the crime who seeks protection by reason of the exception, has the burden of proving that he comes within the same." *State v. Johnson,* 229 N.C. 701, 51 S.E. 2d 186. Nothing in the evidence warrants a finding defendant had permission to enter the building.

The court charged:

"As to the charge of felonious breaking and entering, before the State is entitled to a conviction upon that charge, it must prove to your satisfaction beyond a reasonable doubt, first, that there was either a breaking and entering or an unlawful entry by the defendant; second, that it must be the breaking or unlawful entry of some building wherein merchandise or money or property was kept; third, that the owner of the premises did not consent to the breaking or entering; and fourth, that at the time of such breaking or entering the defendant intended to steal some merchandise or property therefrom."

\*     \*     \*     \*

"So, if the State has proved beyond a reasonable doubt

that the defendant did break or did unlawfully enter a building occupied by Morris and Associates, Inc., *with* the consent of the owner, against its will and that at the time of doing so he intended to steal anything therefrom; then it would be your duty to find him guilty of felonious breaking or entering, as charged."

[2] The court, either by oversight, or inadvertance, is recorded as having said "with the consent . . . against its will" which clearly indicates the court said, or intended to say "without the consent . . . against its will." In view of the charge as a whole and the total absence of any evidence the owner consented to the entry, it is apparent the jury could not have misunderstood the court's language. The use of the words "with the consent" rather than "without the consent" was not prejudicial. "This was a *lapsus linguae*, but it is not perceived wherein it was hurtful. We regard it as a harmless inadvertence." *In re Will of Wallace*, 227 N.C. 459, 42 S.E. 2d 520. See also *State v. Truelove*, 224 N.C. 147, 29 S.E. 2d 460. Neither the defendant nor the State presented any evidence the defendant had the owner's consent to break into the building, steal personal property, and attempt to open the safe. The defendant's exception to the court's failure to dismiss the charge of felonious housebreaking is not sustained.

The indictment in #71 CR 5309 charged the offense defined in G.S. 14-89.1 which provides:

"*Safecracking and safe robbery.*—Any person who shall by the use of explosives, drills, or other tools unlawfully force open or attempt to force open or 'pick' the combination of a safe or vault used for storing money or other valuables, shall, upon conviction thereof, receive a sentence, in the discretion of the trial judge, of from ten years to life imprisonment in the State penitentiary."

[3] When the jury returned to the courtroom and announced it had agreed on a verdict, the foreman first announced the jury found the defendant guilty of safecracking. At the request of defense counsel, the jury was polled. During the poll one of the jurors stated he understood the verdict to be guilty of "attempted safecracking." The court again explained to the jury that it could find the defendant guilty of safecracking, or guilty of attempted safecracking, or not guilty. The court ordered the

jury to be polled after the explanation as to possible verdicts and each individual juror stated the verdict to be "guilty of attempted safecracking" and each said he still assented thereto. The court accepted the verdict as disclosed by the poll and ordered it recorded in the minutes of the court.

[4] The defendant sought to challenge the verdict on the ground it was neither authorized by the indictment nor by the statute, the latter being G.S. 14-89.1. A verdict should answer the issue raised by the State's charge of guilt contained in the indictment and the defendant's denial raised by his plea of not guilty. "A verdict is not bad for informality . . . in the language . . . if it is such that it can be clearly seen what is intended. It is to have a reasonable intendment and is to receive a reasonable construction and must not be voided except from necessity." *State v. Perry,* 225 N.C. 174, 33 S.E. 2d 869. See also *State v. Rhinehart,* 267 N.C. 470, 148 S.E. 2d 651. The indictment charged that the defendant by the use of a hammer, torch, chisel, hacksaw, etc. did unlawfully and feloniously force open and attempt to force open the safe and vault being used for the storage of money and other valuables, the property of the named corporation. With respect to the issues to be answered by the jury, the court gave this instruction:

> " . . . (Y)ou will say by your verdict whether you find the defendant guilty of safecracking, or attempted safecracking, as charged in the bill of indictment; or not guilty; . . . "

[5] The charge clearly disclosed the court used the expression "safecracking" and "attempted safecracking" as synonymous with "force open" and "attempt to force open" a safe or vault. The court was using the short title of the statute. This Court in at least three opinions has used "safecracking" and "attempted safecracking" as equivalent in words to "force open" and "attempt to force open" a safe or vault. *State v. Whaley,* 262 N.C. 536, 138 S.E. 2d 138; *State v. Bullock,* 268 N.C. 560, 151 S.E. 2d 9; *State v. Pinyatello,* 272 N.C. 312, 158 S.E. 2d 596.

Inasmuch as the statute made an attempt to force open a safe or vault a crime of equal dignity with the completed offense and the indictment charged the attempt, the verdict of guilty of the latter authorized the court to enter judgment on the verdict. The court's use of the word "safecracking" was in no wise mis-

leading and could not have misled the jury. The assignment of error based on the charge is not sustained.

[6] The statute made the completed act of safecracking and the attempted safecracking offenses of equal dignity. In so providing, the Legislature followed the pattern with respect to safecracking or attempted safecracking that it had followed in the case of robbery or attempted robbery with firearms. G.S. 14-87. Each made the attempt to commit the offense, an offense of equal gravity with the completed act. In *State v. Parker,* 262 N.C. 679, 138 S.E. 2d 496, this Court in passing on the charge of attempt to commit armed robbery said: "So great is the offense when life is endangered and threatened by the use of firearms . . . that it is not of controlling consequence whether the assailants profit much or little, or nothing, from their felonious undertaking." In passing the act codified as G.S. 14-89.1, the Legislature acted within its authority in providing punishment for attempt to force open a safe or vault where valuables are kept. "An attempt to commit a crime is an act done with intent to commit that crime, carried beyond the mere preparation to commit, but falling short of its actual commission." *State v. Surles,* 230 N.C. 272, 52 S.E. 2d 880. The foregoing is approved in *State v. Rogers,* 273 N.C. 208, 159 S.E. 2d 525. Certainly removing the dial, sawing off the hinges, chiseling out a part of the concrete bottom of the small safe and "smudging" it with a blowtorch go beyond mere preparation for safecracking, and in law constitute "attempted safecracking."

[7] Finally, the defendant contends the verdict was so incomplete and indefinite as to render it insufficient to support the court's judgment. Notwithstanding the foreman's announcement that the jury found the defendant guilty of safecracking, the first poll indicated such was not the unanimous agreement. The court repeated its instruction that the jury could render a verdict of guilty of safecracking, or guilty of attempted safecracking, or not guilty. The second poll of the jury disclosed without question the unanimous agreement of the jury on a verdict of guilty of attempted safecracking and each juror answered that he still assented thereto. The verdict was then accepted by the court and recorded in its proceedings. In *Davis v. State of North Carolina,* 273 N.C. 533, 160 S.E. 2d 697, Chief Justice Parker used this language: "If there was any uncertainty in the verdict, that uncertainty was

---

completely removed by the polling of the jury and their answers to the court upon the polling." See also *State v. Dow,* 246 N.C. 644, 99 S.E. 2d 860; *State v. Hemphill,* 273 N.C. 388, 160 S.E. 2d 53; *State v. Cephus,* 241 N.C. 562, 86 S.E. 2d 70.

After full review, this Court has been unable to discover any error of law committed in the trial.

No error.