STATE OF NORTH CAROLINA v. MICHAEL COUSINS

No. 31

(Filed 6 April 1976)

1. **Criminal Law § 99— admonition to defense counsel — no expression of opinion**

   The trial judge's admonition to defense counsel in the presence of the jury to refer to his client as defendant or as Michael Cousins rather than Michael was made to preserve the trial judge's conception of dignity and decorum in the courtroom and did not constitute an expression of opinion or a display of partiality toward either defendant or the State.

State v. Cousins

2. **Criminal Law § 87; Witnesses § 1— concessions to State's witness — failure to notify defense counsel — suppression of testimony**

Although the district attorney failed to notify defense counsel of an agreement to grant a State's witness concessions in return for truthful testimony as required by G.S. 15A-1054, his failure to do so did not warrant suppression of the witness's testimony since the statute provides that the remedy for such omission shall be the granting of a recess when the interest of justice requires and the trial judge did grant a recess, and since the record shows that defense counsel had knowledge of the agreement for over three weeks.

3. **Criminal Law § 87; Witnesses § 1— concessions to State's witness — informing jury**

Trial court's refusal to inform the jury prior to a witness's testimony that the district attorney had agreed to grant concessions to the witness in return for his testimony was not prejudicial error where the jury was fully informed of the agreement prior to the time it began deliberations.

4. **Homicide § 20— pistol — adequacy of identification — relevancy**

A pistol was sufficiently identified for its admission in a homicide prosecution where an officer testified it looked like the one he found lying some 20 feet from the body of deceased and the evidence showed the pistol had been in the custody of the police since the night of the shooting; furthermore, the pistol was relevant to contradict defendant's contention that deceased shot at him with a pistol before he fired where an officer testified the gun had not been recently fired when it was found at the crime scene.

5. **Homicide § 20; Criminal Law § 50— tag on pistol — notation that gun found at "murder scene"**

In a homicide prosecution, admission of a tag attached to a pistol previously admitted in evidence which stated that the gun was found at the "murder scene" near the body of deceased, if technically improper, did not constitute prejudicial error.

6. **Criminal Law § 102— jury argument — discrepancy from evidence — action by court**

In a homicide prosecution in which defendant admitted on cross-examination that he had been convicted of assault growing out of an incident in which he fired a sawed-off shotgun at a person three times, the district attorney's jury argument that defendant admitted "that he pumped three shotgun shells into another man" was not so inflammatory or so far outside the record so as to require further action by the trial judge after he directed the district attorney to move on to other matters.

7. **Homicide § 27— incorrect instructions on voluntary manslaughter**

The trial court in this homicide prosecution committed prejudicial error in twice incorrectly instructing the jury that in order to convict defendant of voluntary manslaughter it must find that defendant did not act in the heat of passion, did not act upon adequate provocation, and that the killing occurred sufficiently long after the provocation that the passion of a person of average mind and disposition would

have cooled, notwithstanding the court properly defined voluntary manslaughter in another portion of the charge.

APPEAL by defendant from *Canaday, J.,* 29 September 1975 Session of ORANGE Superior Court.

Defendant was charged in an indictment, regular in form, with the first-degree murder of Issac Ray. He entered a plea of not guilty.

The State's evidence tended to show the following:

On the night of 2 March and the early morning hours of 3 March 1975, defendant and Issac Ray were at a night spot known as the Duces Wild. This place was located at 226 Colby Street in Hillsborough, North Carolina, and was operated by Harvin McAdoo. We will hereafter refer to this establishment as McAdoo's place. After some altercations between defendant and Ray, defendant asked Melvin Robinson if he had a gun. At defendant's request, Robinson went to his home where he obtained a .22 caliber automatic rifle fully loaded with high powered, hollow-point bullets. Defendant told Robinson that he (defendant) was going to "get Issac Ray." Upon returning to McAdoo's place defendant jumped out of Robinson's car, picked up the rifle, and started toward the men's room. Robinson testified that he saw defendant and Ray engage in a conversation which included profanity and a statement by defendant to Ray to the effect that "I am going to get you." According to Robinson, defendant pointed the rifle toward Ray who fell to the ground after defendant fired seven shots. Robinson saw Ray try to get a pistol out of his pocket at the time defendant fired the rifle. Defendant then ran back to the car and Robinson took him home.

Dr. Paige Hudson, a pathologist, testified that he performed an autopsy on the body of Issac Ray and observed nine entrance wounds caused by small caliber bullets. In his opinion, Issac Ray died of multiple gunshot wounds.

Officer Albert and Deputy Sheriff Mickey Sykes gave testimony which tended to show that, pursuant to a call, Officer Albert went to McAdoo's place where he observed the body of Issac Ray lying on the ground. He found a pistol about twenty feet from Ray's body and he gave the pistol to Officer Sykes.

The State offered other corroborative and cumulative evidence.

Defendant testified and in substance stated that while he was in the bathroom at McAdoo's place around midnight on the 2nd day of March 1975, Issac Ray came in, cursed him, tore his shirt and tried to cut him with a knife. Defendant later asked Ray to pay for his shirt and at that time Ray pulled a pistol and threatened defendant. Defendant stated that he then went with Melvin Robinson to Robinson's home where they obtained a .22 caliber rifle. Upon returning to McAdoo's place, he saw Ray standing near the men's room. He testified that Ray pulled a pistol and shot toward him and when he returned the fire Ray fell. Defendant left with Robinson.

Defendant offered other witnesses whose testimony tended to corroborate his testimony.

The jury returned a verdict of murder in the second degree and defendant appealed from judgment imposing a sentence of life imprisonment.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General William F. O'Connell, for the State.*

*Barry T. Winston for defendant appellant.*

BRANCH, Justice.

[1] We find no merit in defendant's contention that the trial judge committed prejudicial error by directing defense counsel in the presence of the jury to refer to his client as defendant or as Michael Cousins rather than Michael. Obviously the trial judge's admonition to defense counsel was made in order to preserve the trial judge's conception of dignity and decorum in the courtroom. The remarks made by the trial judge did not express an opinion or display any partiality toward either defendant or the State. Under these circumstances, defendant has failed to show that the trial judge's admonition had any probable effect upon the jury's verdict. *State v. Gibson,* 233 N.C. 691, 65 S.E. 2d 508; *State v. Carter,* 233 N.C. 581, 65 S.E. 2d 9.

[2] Defendant next assigns as error the failure of the trial judge to grant his motion to suppress the testimony of Melvin Robinson because the district attorney failed to give notice to defense counsel of an agreement with Melvin Robinson to give him concessions in return for truthful testimony. Defendant also argues that the trial judge committed prejudicial error in deny-

ing his motion to inform the jury of this agreement prior to the time when the witness Robinson testified.

G.S. 15A-1054 contains the following provisions:

(a) Whether or not a grant of immunity is conferred under this Article, a solicitor, when the interest of justice requires, may exercise his discretion not to try any suspect for offenses believed to have been committed within the judicial district, to agree to charge reductions, or to agree to recommend sentence concessions, upon the understanding or agreement that the suspect will provide truthful testimony in one or more criminal proceedings.

\* \* \*

(c) When a solicitor enters into any arrangement authorized by this section, written notice fully disclosing the terms of the arrangement must be provided to defense counsel, or to the defendant if not represented by counsel, against whom such testimony is to be offered, a reasonable time prior to any proceeding in which the person with whom the arrangement is made is expected to testify. Upon motion of the defendant or his counsel on grounds of surprise or for other good cause or when the interests of justice require, the court must grant a recess.

This record discloses that the district attorney did fail to notify defense counsel of the agreement as directed by the above-quoted statute. Although the district attorney should have disclosed the existence and terms of this agreement to defense counsel, his failure to do so did not warrant suppression of Melvin Robinson's testimony. The statute provides that the remedy for such omission shall be the granting of a recess when the interest of justice so requires. Here the trial judge did grant a recess and defense counsel did not take exception to the length of time granted. There was no possible prejudice to defendant on the ground of surprise since the record shows that defense counsel had known of this agreement for over three weeks.

We hold that the trial judge correctly denied defendant's motion to suppress the testimony of Melvin Robinson.

[3] Neither do we find prejudicial error in the trial judge's refusal to inform the jury of the agreement prior to the time that Robinson testified. After Robinson testified, the prosecution

introduced the agreement into evidence. Judge Canaday instructed the jury that Robinson was testifying pursuant to an agreement with the State and if the jury should find that the witness testified in whole or in part because of such agreement, the jury should examine his testimony with great care and caution. Defense counsel also cross-examined the witness Robinson concerning promises made to him. Thus it appears that the jury was fully informed of the agreement between the district attorney and the witness Robinson prior to the time it began deliberations.

[4] Defendant contends that the court erred by admitting into evidence a pistol identified as State's Exhibit 15.

It is well established that any object which has a relevant connection with a case is ordinarily admissible into evidence. *State v. Atkinson,* 278 N.C. 168, 179 S.E. 2d 410, *rev'd in part on other grounds,* 403 U.S. 948, 29 L.Ed. 2d 861, 91 S.Ct. 2292; *State v. Harris,* 222 N.C. 157, 22 S.E. 2d 229.

In *State v. Macklin,* 210 N.C. 496, 187 S.E. 785, this Court held that a shotgun found in the defendant's room several days after the alleged shooting which was described as "like the one with which he had been seen on the night the deceased was shot" was admissible into evidence. In *State v. Winford,* 279 N.C. 58, 181 S.E. 2d 423, we approved the admission into evidence of a small knife found on the deceased on the theory that it contradicted defendant's statement that deceased was attacking him with a long-bladed knife at the time of the killing. In instant case, Officer Albert testified, without objection, that he found a pistol lying about twenty feet from the body of Issac Ray and that he turned this weapon over to Deputy Sheriff Mickey Sykes. Albert testified that the pistol looked like the one he found on the night of the shooting. Deputy Sheriff Sykes testified, without objection, that he had seen the pistol identified as State's Exhibit 15 before and that Officer Albert handed it to him on the scene. He further stated that the gun had not been recently fired when he received it from Officer Albert. The unfired pistol, Exhibit 15, was found near the body of deceased and is relevant evidence in light of defendant's contention that deceased shot at him with a pistol before he ever fired. The evidence further shows that this pistol had been in the custody of police officers since the night of the killing. It must be borne in mind that the pistol was not used in an experiment and whether it was in the same condition at the

time that it was found is of little moment. In our opinion, State's Exhibit 15 was relevant evidence and was amply identified. We, therefore, hold that the trial judge correctly admitted the pistol into evidence.

[5] Defendant also assigns as error the court's ruling admitting into evidence Exhibit 16 which was a tag attached to the pistol, State's Exhibit 15. The tag contained the following language: "Gun found at murder scene, near body of Isaac Ray. s/ Nickey Syke, 3-2-75."

Before this exhibit was admitted into evidence, Deputy Sheriff Mickey Sykes had testified that Exhibit 16 was the tag he used to label the pistol Exhibit 15. He further testified that the words contained on Exhibit 15 were in his handwriting. Prior to Sheriff Sykes' testimony, Officer Albert had testified that he found the pistol near the body of Isaac Ray. Assuming, *arguendo,* that the admission of Exhibit 16 was technically improper we hold that under the above-recited circumstances, defendant has failed to show any prejudice or to show that the jury would likely have reached a different result had this evidence been excluded. *State v. Temple,* 269 N.C. 57, 152 S.E. 2d 206; *State v. Rowland,* 263 N.C. 353, 139 S.E. 2d 661. This assignment of error is overruled.

[6] Defendant contends that the trial judge erred in failing to declare a mistrial and in failing to properly instruct the jury concerning the district attorney's references to a prior conviction during final argument to the jury.

On cross-examination, defendant testified:

. . . Yes, sir, I was convicted of assaulting Mr. Samuel Lee Powell with a sawed-off shotgun in 1973. No, I shot a shotgun at him. Yes, sir, I shot a shotgun at Mr. Powell three times. I was convicted of it then. . . .

During his closing argument, the district attorney referred to this conviction in the following manner:

. . . Are you going to believe a man who in 1973 admits now that he pumped three shotgun shells into another man and pled guilty to assault with a deadly weapon? . . .

At this point, defense counsel called to the court's attention that there was no evidence that "anybody pumped any shots into anybody else."

The court then said: "All right, sir, proceed to some other points of argument."

We have long recognized that argument of counsel must be left largely in the discretion of the trial judge and that counsel are entitled to a wide latitude in argument during a hotly contested case. *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572, *rev'd in part on other grounds,* 408 U.S. 939, 33 L.Ed. 2d 761, 92 S.Ct. 2873; *State v. Bowen,* 230 N.C. 710, 55 S.E. 2d 466; *State v. Little,* 228 N.C. 417, 45 S.E. 2d 542. Nevertheless counsel may not by his argument place before the jury incompetent and prejudicial matter not admissible into evidence, and he may not "travel outside the record." *State v. Westbrook, supra; State v. Little, supra.*

In instant case, defendant admitted that he had been convicted of an assault growing out of an incident in which he fired a sawed-off shotgun at a person three times. The evidence concerning this conviction was competent. True the district attorney's language was more colorful than the actual evidence and the actual evidence did not reveal whether the person fired upon was hit. However, defendant's animus must have been the same in either event. The discrepancy between the evidence and the district attorney's argument was promptly brought to the attention of the court who directed the district attorney to move on to other matters.

We do not believe that the district attorney used such inflammatory language or "traveled outside the record" in such a manner as to demand further action by the trial judge.

This assignment of error is overruled.

[7] Defendant by his final assignment of error contends that the trial judge erred in his charge on voluntary manslaughter.

In the first portion of the charge relating to voluntary manslaughter, the trial judge correctly instructed as follows:

> . . . Now, with respect to the offense of voluntary manslaughter, I instruct you that voluntary manslaughter is an intentional killing which occurs in the heat of passion, produced by acts of adequate provocation on the part of the decedent (sic), which killing occurs so soon after the provocation that the passions of a person of average mind and disposition would not have cooled. . . .

*State v. Rummage,* 280 N.C. 51, 185 S.E. 2d 221; *State v. Watson,* 222 N.C. 672, 24 S.E. 2d 540.

However, just prior to his final mandate to the jury as to voluntary manslaughter, the trial judge instructed:

> Now, in order to convict the defendant of voluntary manslaughter, the State must satisfy you from the evidence, beyond a reasonable doubt, that the defendant intentionally killed the decedent (sic), and further, *that the defendant did not act in the heat of passion, and further, that the defendant did not act upon adequate provocation, and further, that the killing occurred sufficiently long after the occurence (sic) of such provocations may have existed, that the passion of a person of average mind and disposition would have cooled.* (Emphasis ours.)

Immediately thereafter the court, in applying the law to the facts and in its final mandate on the charge of voluntary manslaughter, charged:

> So with respect to the offense of voluntary manslaughter, Ladies and Gentlemen, I instruct you that if the State has satisfied you from the evidence, beyond a reasonable doubt, the burden here again being upon the State to do so, that on March 2, 1975 or March 2, 1975 (sic), the defendant, Michael Cousins, intentionally and without justification or excuse shot Isaac (sic) Ray, and that the defendant, *Michael Cousins, did not act in the heat of passion, and that the defendant, Michael Cousins, did not act upon adequate provocation from the decedant (sic), Isaac (sic) Ray, and that the shooting and killing of Isaac (sic) Ray by the defendant, Michael Cousins, occurred sufficiently long after the occurrence of such provocation as may have existed, that the passion of a person of average mind and disposition would have cooled,* it would be your duty, if the State has so satisfied you in each of these respects, to return a verdict of guilty of voluntary manslaughter. (Emphasis added.)

Manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393; *State v. Benge,* 272 N.C. 261, 158 S.E. 2d 70.

Second-degree murder is the unlawful killing of a human being with malice, but without premeditation and deliberation.

*State v. Duboise, supra; State v. Winford,* 279 N.C. 58, 181 S.E. 2d 423; *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889.

This Court has defined malice as not only hatred, ill will, or spite but also "that condition of mind which prompts a person to take the life of another *intentionally without cause or excuse, or justification." State v. Benson,* 183 N.C. 795, 111 S.E. 869.

It is well established by our decisions that when the court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted upon the incorrect part, and this is particularly so when the incorrect portion of the charge is contained in the application of the law to the facts. *State v. Parrish,* 275 N.C. 69, 165 S.E. 2d 230; *State v. Ingland,* 278 N.C. 42, 178 S.E. 2d 577; *State v. Kea,* 256 N.C. 492, 124 S.E. 2d 174; *State v. Gurley,* 253 N.C. 55, 116 S.E. 2d 143; *State v. Johnson,* 227 N.C. 587, 42 S.E. 2d 685.

The State, citing *State v. Cole,* 280 N.C. 398, 185 S.E. 2d 833, and *State v. Sanders,* 280 N.C. 81, 185 S.E. 2d 158, contends that this was a *lapsus linguae* on the part of the trial judge which does not necessitate a reversal.

In *Sanders* the trial judge instructed that the defendant entered the building "with the consent of the owner" rather than "without the consent of the owner." The Court, noting that there was no evidence of consent by the owner and that it was apparent that the jury could not have misunderstood the court's language, held the language to be a harmless inadvertence. Thus, *Sanders* differs from the case before us in that in *Sanders* it must have been apparent to the jury that there was an inadvertent slip of tongue on the part of the trial judge. Here the trial judge twice and at crucial times in the charge gave an incorrect instruction as to the law and related it to the evidence in a manner which would not disclose patent error to the average juror.

In *Cole* the court instructed that second-degree murder was the intentional killing of a human being without malice and without premeditation and deliberation. However, the trial judge immediately after making the incorrect instruction stated that malice was a necessary element of second-degree murder and again at the conclusion of his charge reminded the jury of the corrected definition of second-degree murder. There, our

Court held that the trial judge's proper and repeated instructions amply corrected any harmful effect of this *lapsus linguae.* The case *sub judice* differs from *Cole* in that the trial judge did not at any time correct the erroneous portion of the charge.

*State v. Kea, supra,* is extraordinarily similar to instant case. There the defendant was charged with first-degree murder and the solicitor elected to "seek no greater verdict than that of murder in the second degree." The jury returned a verdict of murder in the second degree. Defendant appealed assigning as error, *inter alia,* this portion of the charge:

. . . "Manslaughter is the unlawful killing of a human being *with malice* but without premeditation and deliberation, as I have said to you, and is of two kinds, voluntary and involuntary. Voluntary manslaughter, as I have said, is the unlawful killing of a human being *with malice* but without premeditation and deliberation." . . .

In ordering a new trial, this Court stated:

The challenged instruction contains obvious error. Manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. The unlawful killing of a human being with malice, but without premeditation and deliberation, is murder in the second degree.

The court, in an earlier instruction, had given the correct definition of manslaughter. Defendant contended, if guilty at all, he was guilty of no greater crime than manslaughter. The failure, by reason of the conflicting instructions, to draw clearly and accurately the distinction between murder in the second degree and manslaughter must be held sufficiently prejudicial to entitle defendant to a new trial.

It is just as obvious this was a *lapsus linguae* on the part of the able trial judge or an error in transcription of the record since the judge had previously correctly charged on voluntary manslaughter. Nevertheless, we are bound by the record and the record discloses prejudicial error in this portion of the charge.

Finally, the fact that defendant was convicted of murder in the second degree does not render the error harmless. *State v. Kea, supra; State v. DeGraffenreid,* 223 N.C. 461, 27 S.E.

2d 130; *State v. Freeman,* 275 N.C. 662, 170 S.E. 2d 461 (dictum).

Prejudicial error in the charge requires that there be a

New trial.