STATE OF NORTH CAROLINA v. GLENWOOD EARL MOSES AND LESLIE
GIBBS, JR.

No. 808SC1207

(Filed 16 June 1981)

**1. Criminal Law § 66.18— in-court identification—admissibility determined at prior trial—voir dire not necessary at second trial**

Where a voir dire hearing was held on the admissibility of in-court identification testimony at defendant's first trial which ended in a mistrial, no voir dire hearing on the admissibility of the identification testimony was required at defendant's second trial in the absence of a showing by defendant that he could offer evidence additional to or different from that given at the first hearing.

**2. Criminal Law § 66.9— photographic identification—officer's suggestion of defendant's name—no impermissible suggestiveness**

A pretrial photographic identification of defendant by a robbery victim was not impermissibly suggestive because an officer suggested to the victim the possible name of the person who robbed her where the officer did not suggest defendant's physical identity to her, and the victim was able without prompting to select defendant's photograph, which contained no name, from a lineup containing the photographs of six persons.

**3. Criminal Law § 92.1— consolidation of charges against two defendants**

There was no merit to defendant's contention that the trial court erred in consolidating his trial for armed robbery with that of a codefendant because certain evidence was admissible only against the codefendant since a pistol and currency found in a search of a car occupied by both defendants was admissible against both; the trial court instructed the jury not to consider against defendant evidence which was found on the person of the codefendant; and neither defendant offered any evidence and there was no fundamental conflict between them in the case.

**4. Criminal Law §§ 26.8, 128.1— mistrial—failure to find facts—subsequent trial not double jeopardy**

Any error in the trial court's failure to make findings of fact in declaring a mistrial at defendant's first trial as required by G.S. 15A-1064 was not prejudicial to defendant where the mistrial was granted at defendant's request, and defendant's subsequent retrial did not place him in double jeopardy.

**5. Criminal Law § 88.1— refusal to permit certain cross-examination**

In this prosecution for armed robbery, defendant's constitutional right to cross-examination was not violated by the trial court's refusal to permit defense counsel to ask a State's witness questions concerning his receipt of money from the police department after the robbery in question where the trial court found that the answers to such questions had no bearing on the witness's credibility and were immaterial and irrelevant on the basis of evidence at an *in camera* hearing which tended to show that the witness had

State v. Moses

received money for supplying the police with information concerning drug sales and the location of drug selling operations, the witness was frightened that revealing such information in open court would endanger his life, and the witness had received no money for information he gave the police concerning the robbery in question. Art. I, Section 23 of the N.C. Constitution; Sixth Amendment to the U.S. Constitution.

**6. Criminal Law § 86.8— State's witness—cross-examination as to whether committed certain crimes—assertion of right against self-incrimination**

The trial court did not abuse its discretion in refusing to permit defendant's counsel to cross-examine a State's witness as to whether he had committed breakings and enterings and larcenies on two specified dates after the witness asserted his right against self-incrimination.

**7. Criminal Law § 90.1— State's impeachment of own witness—harmless error**

Any error in permitting the State to contradict its own witness by an officer's testimony that the witness told him that defendant committed the robbery in question was not prejudicial to defendant.

**8. Criminal Law § 113.1— recapitulation of evidence—lapsus linguae**

Defendant was not prejudiced by the trial court's *lapsus linguae* in instructing the jury that there was evidence tending to show defendant's presence "at" the motel where a robbery occurred rather than "near" the motel.

**9. Searches and Seizures §§ 11, 34— valid reason to stop vehicle—items in plain view—probable cause to search vehicle—search incident to arrest**

Officers had a valid reason to stop defendant's car where they had a warrant for the arrest of a codefendant who was riding in the car and information linking defendant and the codefendant to an armed robbery, and officers lawfully seized a gun holster and money which were in plain view in the car. Furthermore, officers had probable cause to search the car and to seize a gun found under the front seat, and officers lawfully seized money and a motel room key found on defendant's person as an incident of defendant's lawful arrest.

**10. Criminal Law § 9.4— instructions on aiding and abetting**

The trial court adequately instructed the jury on aiding and abetting where the court charged that, in order to find defendant guilty of armed robbery as an aider and abettor, the jury would have to find that defendant, although not physically present at the time the robbery was committed, "shared the criminal purpose" of the perpetrator and to the knowledge of the perpetrator was aiding or was in a position to aid him.

APPEAL by defendants from *Bruce, Judge*. Judgments entered 1 August 1980 in Superior Court, WAYNE County. Heard in the Court of Appeals 28 April 1981.

Defendants Moses and Gibbs were charged in separate indictments with the 19 April 1980 armed robbery of Annie Mae Lee.

The first trial against defendant Moses ended in a mistrial. At the second trial, the State's motion to consolidate the cases of the two defendants was granted.

At the consolidated trial, the State's evidence tended to show that on 19 April 1980 at approximately 8:15 p.m., defendant Moses, wearing a black and red toboggan, entered the Motel 6 located on the Highway 70 by-pass in Goldsboro. After requesting a room, and while the desk clerk, Annie Mae Lee, was obtaining a room key, Moses came behind the counter, pulled a gun, and demanded money. After obtaining $301.00 from the cash register, Moses left the motel office.

At approximately 8:30 p.m., Moses was seen by witness William Earl Brown, with defendant Gibbs in Gibbs' brown Camaro on the service road serving Motel 6. After responding to a call reporting the crime and investigating the incident, members of the Goldsboro Police Department obtained a warrant for the arrest of defendant Moses. The warrant was executed at approximately 11:00 p.m. That same night, at about midnight, defendant Moses was observed by police officers following Gibbs and a third person from a house on South George Street and getting into Gibbs' car. Police officers stopped Gibbs' car and placed Moses under arrest. Under the right front seat of the automobile in front of where Moses sat, the police officers found $157.00 in currency and a .32 caliber revolver. On the backseat, the officers found a gun holster. Following the search of the car, defendant Gibbs was placed under arrest. In a search of Gibbs at the police station, officers discovered $50.00 in currency and Motel 6 room key. In a further search of Moses at the police station, officers found $12.00 in currency in the lining of defendant Moses' coat.

Neither defendant offered any evidence. The jury returned guilty verdicts as to both defendants and from judgment entered on the verdicts, each defendant appeals.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General David Roy Blackwell, for the State.*

*George F. Taylor for defendant Moses.*

*Hulse & Hulse, by H. Bruce Hulse, Jr., for defendant Gibbs.*

WELLS, Judge.

For the sake of clarity, we shall treat each defendant's appeal separately.

## Defendant Moses' Appeal

[1]  Defendant Moses first assigns as error the trial court's denial of his motion to suppress the in-court identification of him by State's witness Annie Mae Lee. Although defendant made no motion to strike the allegedly improper testimony at his second trial, he did object to the questions leading to the in-court identification. Normally, upon even a general objection to identification evidence, there should be an immediate *voir dire* hearing to determine the admissibility of evidence. 1 Stansbury's N.C. Evidence § 57, at 176 (Brandis rev. 1973). In the case before us, however, a *voir dire* had been held at the previous trial of defendant. At the second trial, no *voir dire* hearing was necessary unless there was some showing by defendant that he could offer evidence that would be different from that given at the first hearing. *State v. Williams*, 33 N.C. App. 397, 398-99, 235 S.E. 2d 86, 87, *disc. rev. denied*, 293 N.C. 258, 237 S.E. 2d 540 (1977). Defendant Moses made no showing that he had additional or different evidence from that given at the first *voir dire* hearing. His assignment of error, therefore, relates back to his motion to suppress made at the first trial and presents the question of whether the denial of his motion violated his due process rights guaranteed by the U.S. Constitution and the North Carolina Constitution and deprived him of a fair and impartial trial.

In *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), our Supreme Court reiterated the test for determining the validity of pretrial identification procedures:

> The test under the due process clause as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice. [Citations omitted.]

*Id.* at 9, 203 S.E. 2d at 16. Factors to be considered in evaluating the likelihood of mistaken identification include (1) the opportunity of the witness to observe the defendant at the time of the

crime, (2) the witness' degree of attention, (3) the accuracy of the witness' description of the defendant, (4) the level of certainty demonstrated by the witness, and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed. 2d 401, 411 (1972); *see also, State v. Legette*, 292 N.C. 44, 231 S.E. 2d 896 (1977).

After reviewing the record in the present case in light of these principles, we conclude that the trial court properly denied defendant Moses' motion to suppress the in-court identification of him by witness Lee. At defendant Moses' first trial, a *voir dire* was conducted to determine the admissibility of the identification testimony. Lee testified that Moses entered the office of Motel 6 twice on the day of 19 April 1980, once at approximately 5:00 p.m., and later, at the time of the armed robbery. At both times, the office was brightly lighted. At the 5:00 meeting, defendant Moses stood a couple of feet from the witness and remained four or five minutes, giving Lee ample time to observe him. At the second meeting, Lee recognized Moses as the one who had come in earlier. When he came behind the counter, "he was close enough [for Lee] to slap him in the face." Lee was able to describe defendant Moses to police officers as being a black male, about six feet tall, wearing a toboggan, brown slacks and a blue coat. Within an hour or so after the robbery, Lee selected Moses' picture positively from a photographic line-up which included photographs of five other persons. The propriety of that line-up has not been challenged by defendant Moses.

[2]    In his argument, defendant Moses relies heavily on the manner in which Lee discovered his name. After describing Moses to the police officers, Lee was asked if she knew Earl Moses. Her response was, "Yes. Come to think of it, that's who the man was." The suggestion to Lee of a possible name for the person robbing her, however, did not suggest to her Moses' physical identity. In an analogous situation in the case of *State v. Dunlap*, 298 N.C. 725, 259 S.E. 2d 893 (1979), our Supreme Court found no impermissibly suggestive pretrial identification procedure where publicity as to defendant contained only his name and no photographs. Likewise, in the case *sub judice*, Lee simply heard a name. Thereafter, in the photographic line-up, she was able, without prompting, to select defendant Moses' photograph which contained no name. We find nothing which suggests that the

pretrial procedures were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

[3] Defendant Moses' next assignment of error raises the question of whether the trial court properly allowed the State's motion to consolidate his trial with that of defendant Gibbs. The defendant argues that consolidation resulted in the admission of evidence against co-defendant Gibbs that was inadmissible against him and that the limiting instructions by the court could not have cured the prejudicial effect of such evidence. G.S. 15A-926(b)(2)a allows joinder of charges against two or more defendants when each defendant is charged, as in the present case, with accountability for each offense. Where a defendant objects to the joinder of charges, the trial court must deny such joinder whenever, before trial, it is found necessary to promote a fair determination of the guilt or innocence of one or more defendants. G.S. 15A-927(c)(2)a. "Absent a showing that a defendant has been deprived of a fair trial by joinder, the trial judge's discretionary ruling on the question will not be disturbed." *State v. Nelson*, 298 N.C. 573, 586, 260 S.E. 2d 629, 640 (1979), *cert. denied*, 446 U.S. 929 (1980). The rule on consolidation in such cases as the one before us is clearly stated in *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976). We quote:

> Consolidation of cases for trial is generally proper when the offenses charged are of the same class and are so connected in time and place that evidence at trial upon one indictment would be competent and admissible on the other. *State v. Taylor*, 289 N.C. 223, 221 S.E. 2d 359 (1976); *State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972). As a general rule, whether defendants who are jointly indicted should be tried jointly or separately is in the sound discretion of the trial court, and, in the absence of a showing that appellant has been deprived of a fair trial by consolidation, the exercise of the court's discretion will not be disturbed upon appeal. *State v. Taylor*, supra; *State v. Jones*, 280 N.C. 322, 185 S.E. 2d 858 (1972).

289 N.C. at 658-59, 224 S.E. 2d at 561-62. At trial, Moses objected to testimony from officers to the effect that their search of Gibbs' auto revealed a pistol and some currency and the search of Gibbs' person revealed currency and a Motel 6 room key. First, we note

that the evidence as to the gun and the currency in the car was admissible against both defendants. Next, we note that when Moses objected to the questions as to what the search of defendant Gibbs' person revealed, the trial court promptly instructed the jury not to consider that evidence as to Moses. Finally, we note that neither defendant offered any evidence and that there is no fundamental conflict between them in this case. *Cf., State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222 (1976), *death sentence vacated*, 429 U.S. 809, 97 S.Ct. 45, 50 L.Ed. 2d 69 (1976). We see nothing here which has the result of depriving defendant Moses of a fair and impartial trial. Under the circumstances of this case, there was no abuse of discretion by the trial judge in allowing the State's motion and this assignment is overruled.

[4] Defendant Moses next assigns as error the trial court's denial of his motion to dismiss based upon his plea of former jeopardy, contending that the court in his first trial failed to state the reasons for the mistrial, as required in G.S. 15A-1064. This assignment is groundless. Advertent as we are to the constitutional prohibitions against double jeopardy and their proper application, *see, State v. Shuler*, 293 N.C. 34, 42, 235 S.E. 2d 226, 231 (1977); *State v. Cooley*, 47 N.C. App. 376, 384, 268 S.E. 2d 87, 92, *disc. rev. denied*, 301 N.C. 96, 273 S.E. 2d 442 (1980), we hold, nevertheless, that defendant Moses' subsequent trial was not precluded by his plea of former jeopardy where the record discloses that the order of mistrial in the previous trial was granted at defendant's request. Nor are we persuaded that Moses had been prejudiced because the trial judge at the first trial did not make findings of fact, as required in G.S. 15A-1064.[1] Where the mistrial has been granted at defendant's request, there can be no prejudice *to defendant* in the failure to make such findings. Thus, if there was error in the failure of the trial judge to make such findings, it was harmless error and does not constitute grounds for a reversal. *See, State v. Paige*, 272 N.C. 417, 158 S.E. 2d 522 (1968). This assignment is overruled.

[5] Defendant Moses assigns as error the refusal of the trial court to allow defendants' attorneys to ask State's witness Brown

---

1. § 15A-1064. Mistrial; finding of facts required.—Before granting a mistrial, the judge must make finding of facts with respect to the grounds for the mistrial and insert the findings in the record of the case.

questions concerning Brown's receipt of money from the Goldsboro Police Department in June or July 1980. He contends that the trial court's refusal denied him his right to cross-examination as guaranteed by the North Carolina Constitution, Article I, Section 23, and by the Sixth Amendment to the United States Constitution. William Earl Brown told one of the police officers that shortly before or after the robbery he had seen defendant Moses in the car of defendant Gibbs on the service road near Motel 6. When defense counsel for Moses attempted to ask Brown why the Police Department had paid him money, a conference of the judge, the attorneys, and the court reporter was held in chambers. After the conference, the court conducted an *in camera* hearing with witness Brown, Brown's attorney, and the court reporter. That hearing tended to show that witness Brown had received money for supplying the police with information concerning drug sales and the location of drug selling operations. Brown indicated that he was frightened that revealing such information in open court would endanger his life. When the trial judge questioned him about whether he had received money for information he gave the police concerning the armed robbery, Brown responded in the negative. The trial court thereafter entered an order prohibiting questions related to why Brown had received money from the Goldsboro Police Department. The court found that the answers to such questions had no bearing on Brown's credibility as a witness and were immaterial and irrelevant.

While the defendant is entitled to a full and fair cross-examination of State's witnesses, *State v. Bumper*, 275 N.C. 670, 674, 170 S.E. 2d 457, 460 (1969), the scope of cross-examination at trial rests largely within the discretion of the trial judge. *State v. Britt*, 291 N.C. 528, 544-45, 231 S.E. 2d 644, 655 (1977); *see also, State v. Royal*, 300 N.C. 515, 528, 268 S.E. 2d 517, 526 (1980). His rulings thereon will not be held error in the absence of a showing that the verdict was improperly influenced by such rulings. *State v. Britt, supra.* In the case at bar there is no showing of improper influence on the verdict caused by the trial court's limitation of cross-examination of the witness Brown. The assignment of error is overruled.

[6] A related assignment of error brought forward by defendant Moses concerns the trial court's further limitation of his cross-

examination of the witness Brown. The record shows that defendant's attorney attempted to ask the following questions:

Q. You did break into . . . [Adele Robinson's] house and steal her television set on the 12th day of July, 1980?

Objection; sustained.

\*     \*     \*

Q. Did you break and enter into the home of Adele Robinson and steal her television on that day?

Objection.

COURT: The case is pending?

MR. TAYLOR: Yes, sir.

COURT: Sustained.

\*     \*     \*

Q. Now, I'll ask you if you did not on the 15th day of June, 1980, break and enter the dwelling of Leroy Edwards at 201 Fedelon Trail, Goldsboro, North Carolina, and steal, take and carry away from said home a .22 caliber semi-automatic rifle and a Black and Decker saw, the value of $125.00?

COURT: Do you want to answer that?

A. No, I don't.

Q. What was that?

A. No.

COURT: He doesn't want to answer that question.

MR. TAYLOR: I think he's got to give a reason.

A. I have a right.

MR. TAYLOR: I would like to hear it from the witness. I wanted, I want it stated in the record why the witness is not answering that question.

COURT: Step over here and tell Mr. Hood.

---

---

Out of the hearing of the jury:

A. They told me my rights and I don't want to answer the question.

In the hearing of the jury:

MR. TAYLOR: That is not good enough.

COURT: The Court rules that the defendant [sic] refusing to answer the question is an exercise of his right under Article 5 of the Amendment [sic] to the Constitution of the United States as applied to the State by the 14th Amendment.

\*    \*    \*

MR. TAYLOR: Upon what grounds, could I ask Your Honor.

COURT: On the grounds that the answer might tend to incriminate the witness.

We hold that the trial judge properly exercised his discretion in disallowing this disputed cross-examination. An ordinary witness in a trial, being under compulsion to testify, may invoke the protection of the privilege against requiring a witness to give self-incriminating testimony. *See generally*, 1 Stansbury's N.C. Evidence § 57 (Brandis rev., 1973). While there is some fundamental conflict between this rule and a defendant's right to confront witnesses against him through cross-examination, in the case now before us, the disputed questions had nothing to do with Brown's testimony against Moses, but were clearly offered to test his credibility as a witness by showing bad character. We find that a fair balancing of the interest of the defendant in impeaching the witness and the interest of the witness in protecting himself from incrimination by responding to questions which in effect accused him of criminal acts gave the trial judge clear discretion to rule as he did and this assignment is overruled.

[7] Next defendant Moses assigns as error the trial court's allowing the State "to impeach" its witness Brown and the trial court's later instructions relating to the impeachment. The testimony about which defendant Moses complains concerned evidence given by police officer Melvin which Moses contends

conflicted with evidence given by witness Brown. The sequence of events leading up to the basis for this assignment of error was as follows. Officer Melvin testified that when he encountered Brown near the scene of the robbery, he inquired as to whether Brown had seen a person fitting the description Melvin had been given by Lee. Brown then informed Melvin that he had seen such a person, identified the person as Moses, and informed Melvin that Moses was in Gibbs' car. Brown followed Melvin as a witness and testified on direct to these events. On cross-examination by Gibbs' counsel, Brown testified that he had not told Melvin or any other police officer that Moses was the person who robbed the motel, but had informed Melvin that he had seen Moses in the car with Gibbs. Melvin was then recalled and was allowed to testify over Moses' objections that when Brown identified Moses as the person fitting the description, Melvin said to Brown "he robbed Motel 6" and then Brown said, "Earl Moses did it. Leslie Gibbs, Jr., was driving the car. It was a brown Camaro belonging to Leslie Gibbs, Jr." Upon Moses' objection, and prior to Officer Melvin's recall testimony as described above, the trial court conducted a *voir dire* examination of Melvin, and then gave the following limiting instruction to the jury:

> Ladies and gentlemen, what William Earl Brown said to Ronald Melvin on the 19th day of April, 1980, is admitted solely for the purpose of corroboration of the testimony of William Earl Brown. It is not substantive evidence. To corroborate means to add to; to impeach means to tear down. Under the law of this State, consistent statements made by a witness on a previous occasion are considered to corroborate or add to the credibility of the witness.

> In this case if William Earl Brown made statements that were made that are inconsistent with the testimony of the witness, are said to impeach or tear down the testimony of a witness. Now, what William Earl Brown said to Ronald Melvin is not evidence of the truth of what was said on the 19th of April, 1980, but is only admitted for the purpose as it might bear on the credibility of William Earl Brown.

Defendant cites *State v. Moore*, 300 N.C. 694, 268 S.E. 2d 196 (1980); *State v. Warren*, 289 N.C. 551, 223 S.E. 2d 317 (1976); *State v. Anderson*, 283 N.C. 218, 195 S.E. 2d 561 (1973); and *State v.*

*Bagley*, 229 N.C. 723, 51 S.E. 2d 298 (1949) in support of his argument. All of these cases state the general rule that in a criminal case, neither party may impeach the testimony of its own witness, either directly or through the testimony of another, and that it is error to do so. In the case before us, however, we find that there was no prejudice to the defendant because there is no reasonable possibility that, had the error not been committed, a different result would have been reached. *See*, G.S. 15A-1443. The State's evidence as to Moses' identity was overwhelming. Lee, having seen Moses in the motel office twice within a space of less than four hours, remembered his description clearly, and when his name was first mentioned to her, instantly recalled him as the person who robbed her. Her testimony of the length of time she had known Moses and the circumstances under which she had known him leave little doubt as to the certainty of her identification of him. Brown's unimpeached testimony placed Moses near the scene of the robbery shortly after it was committed, dressed as he was described by Lee, but did not place Moses at the motel — or even place Brown at the motel. It does not appear reasonable to assume that the jury relied on Melvin's testimony contradictory to Brown's statements on cross-examination to identify Moses as the robber. This assignment is overruled.

**[8]**  A similar disposition must be made of Moses' assignment of error relating to the following portion of the charge to the jury:

> There's also evidence tending to identify . . . Moses as being present at the Motel 6 shortly before or shortly after the robbery. This is the testimony of William Earl Brown.

Obviously, the use of the words "*at* the Motel 6" rather than "*near* the Motel 6" was a *lapsus linguae*, and the error, if any, was not prejudicial. This assignment is overruled. *See, State v. Sanders*, 280 N.C. 81, 86, 185 S.E. 2d 158, 162 (1971).

We have reviewed the other assignments of error brought forward by defendant Moses, and find them to be without merit, and overrule them.

### Defendant Gibbs' Appeal

Defendant Gibbs presents eight questions for this Court's consideration. Three of these questions, dealing with impeach-

ment of State's witness and the right of cross-examination, have been answered in our treatment of defendant Moses' appeal. With regard to these three questions, defendant Gibbs presents no new arguments which might distinguish his position from that of Moses, and we, therefore, find no need for further discussion of those questions. Those assignments are overruled.

[9]    Defendant Gibbs also assigns as error the trial court's denial of his motion to suppress evidence obtained (1) from his automobile and (2) from his person, both during a warrantless search. Upon defendant Gibbs' motion, the court conducted a *voir dire* examination to determine the admissibility of the evidence. The State presented evidence tending to show that, based on the information received by the Goldsboro Police Department, a warrant was issued for the arrest of defendant Moses. While one police officer stated that he did not believe he had enough information to obtain a warrant for Gibbs' arrest, there was information, known by the police officers involved, that linked Moses *and* Gibbs to armed robbery. When the police officers stopped Gibbs' car to execute the warrant against Moses, they found Moses in, and removed him from, the backseat. In the process, two policemen saw money lying under the front seat and a gun holster on the backseat. While obtaining these items, one policeman found a .32 caliber revolver under the right front seat of the car. After arresting Gibbs they searched him and found $50.00 and a Motel 6 room key.

After reviewing this and other evidence produced at the *voir dire*, we find no error in the trial court's admission of the evidence seized. The police officers had a warrant for the arrest of Earl Moses and, therefore, had a valid reason to stop the car. The gun holster and the money were legally seized from the vehicle because they were in "plain view." *State v. Harvey*, 281 N.C. 1, 11-12, 187 S.E. 2d 706, 713 (1972); *State v. Virgil*, 276 N.C. 217, 227, 172 S.E. 2d 28, 34 (1970). Where there are facts sufficient to establish probable cause to believe that a vehicle contains contraband, a warrantless search is permissible. *See, Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970). Furthermore, the search of Gibbs' person was incident to a lawful arrest and was, therefore, valid. *State v. Cobb*, 295 N.C. 1, 243 S.E. 2d 759 (1978).

**[10]**  Defendant Gibbs next assigns as error the trial court's instructions to the jury on the theory of aiding and abetting. Specifically, he complains of the following excerpt from the charge to the jury:

> I charge that for you to find the defendant, Leslie Gibbs, Jr., guilty of robbery with a firearm because of aiding and abetting, the State of North Carolina must prove to you by the evidence and beyond a reasonable doubt three things: First, that the crime of robbery with a firearm was committed by Glenwood Earl Moses; and second, that the defendant, Leslie Gibbs, Jr., although he was not physically present at the time that the crime was committed, shared the criminal purpose of Glenwood Earl Moses and to Moses' knowledge was aiding him or was in a position to aid him at the time the crime was committed.
>
> With respect to criminal purpose, I instruct you that purpose or intent is a circumstance that is seldom, if ever, capable of proof by direct evidence. It may be a mental state of mind and there can be no eyewitness as to what's going on in a person's mind. An intent or purpose may be proved from circumstances from which it may be inferred both before and at the time of and after the alleged crime. If you find that the defendant, Gibbs, knowing what Moses was about, drove Moses to Motel 6 and waited outside either in or near his car and drove Moses away from the robbery, then that would be aiding Moses or being in a position to aid Moses within the meaning of the applicable law to this case.
>
> I said a minute ago, the State must prove to you three things. I was in error. I should have said two; consider that I said two things in connection with the defendant, Leslie Gibbs. The State of North Carolina must prove two things by the evidence and beyond a reasonable doubt, those two things being in summary that the crime of robbery with a firearm was committed by Glenwood Earl Moses, and that the defendant, Leslie Gibbs, although not physically present at the time the crime was committed, shared the criminal purpose of Glenwood Earl Moses and to Moses' knowledge was aiding or was in a position to aid him at the time the crime was committed.

I, therefore, charge that if you find from the evidence and beyond a reasonable doubt that on or about the 19th day of April, 1980, Glenwood Earl Moses committed the crime of robbery with a firearm; that Glenwood Earl Moses had in his possession a firearm and that he took and carried away U.S. currency from the person or presence of Annie Mae Lee, without her voluntary consent by endangering or threatening Annie Mae Lee's life with the use or threatened use of a pistol, Moses knowing that he was not entitled to take the currency and intending at the time to steal the currency, and that Leslie Gibbs, Jr., shared the criminal purpose of Glenwood Earl Moses, and to the knowledge of Glenwood Earl Moses, driving Moses to Motel 6, waiting and drove him away, and that in doing so was aiding Glenwood Earl Moses, or was in a position to aid Glenwood Earl Moses at the time the crime was committed, then it would be your duty to return a verdict of robbery with a firearm as to the defendant, Leslie Gibbs, Jr.

If, however, you do not so find or if you have a reasonable doubt as to one or more of those two things, it would be your duty to return a verdict of not guilty as to the defendant, Leslie Gibbs, Jr.

Defendant Gibbs' argument is that the instruction "sharing the criminal purpose" is not consistent with the requirement set forth in *State v. Gaines*, 260 N.C. 228, 132 S.E. 2d 485 (1963), that the jury find that the defendant actively encouraged the perpetrator of the crime by word or deed, and that the jury should have been instructed that it had to find that, by his conduct, Gibbs made it known to Moses that he was standing by to render assistance if necessary.

We disagree. To support defendant Gibbs' conviction of aiding and abetting in an armed robbery, the State had to prove, and the jury was required to find, (1) that the defendant was present, actually or constructively, with intent to aid the perpetrator in the commission of the armed robbery should his assistance become necessary and (2) that such intent was communicated to the actual perpetrators. *State v. Sanders*, 288 N.C. 285, 290-91, 218 S.E. 2d 352, 357 (1975), *cert. denied*, 423 U.S. 1091, 96 S.Ct. 886, 47 L.Ed. 2d 102 (1976). "The communication or intent to aid, if

needed, does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators." *Id.* at 291, 218 S.E. 2d at 357; *see also, State v. Murphy*, 49 N.C. App. 443, 445, 271 S.E. 2d 573, 574 (1980). We believe that the instructions of the trial judge adequately explained to the jury what it had to find in order to find the defendant guilty of aiding and abetting. If the defendant Gibbs, "although not physically present at the time the crime was committed, shared the criminal purpose of . . . Moses and to Moses' knowledge was aiding or was in a position to aid him . . .", then the defendant Gibbs encouraged Moses and had, in some manner, let Moses know this fact. This assignment is overruled.

A related assignment of error, that the trial court incorrectly refused to use defendant Gibbs' requested instructions, based on *State v. Gaines, supra,* is likewise overruled. The instructions tendered by the court were correct and as we have noted above, paralleled the requirements of *Gaines.* The trial court is not required to give requested instructions word for word. It is sufficient if the trial judge's charge is in substantial conformity with the requested instructions, which were supported by the evidence. *State v. Davis*, 291 N.C. 1, 13-14, 229 S.E. 2d 285, 294 (1976).

Defendant Gibbs' other two assignments of error, that the court erred in denying his motion for a mistrial and in denying his motion for directed verdict, were dependent on his success in assignments of error which we have overruled. They are, therefore, without merit and are overruled.

In the trial of each defendant, we find

No error.

Judges VAUGHN and CLARK concur.