STATE OF NORTH CAROLINA v. HAROLD LEGETTE, ALSO KNOWN AS KENNY BROWN, AND FORREST LEE WILSON, ALSO KNOWN AS JAMES LEE WILSON

No. 99

(Filed 8 February 1977)

1. Criminal Law § 66— pretrial photographic identification — impermissible suggestiveness

Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground

State v. Legette

only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

**2. Criminal Law § 66— mistaken identification — factors**

Factors to be considered in evaluating the likelihood of mistaken identification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

**3. Criminal Law § 66— in-court identification — pretrial photographic identification — no taint**

The trial court properly denied defendants' motion to suppress an armed robbery victim's in-court identification on the ground that the identification was tainted by a pretrial photographic identification since the evidence tended to show that the witness viewed defendants for 5-7 minutes at the time of the crime; the crime occurred in broad daylight in a building well lighted with fluorescent lights; the witness was eight feet from one defendant and engaged in conversation with him; the witness observed the other defendant from a distance of 2-3 feet; the witness gave an accurate initial description of defendants; the witness showed a high level of certainty in making a final photographic identification of defendants; the witness's identification at trial was clear and unequivocal; and the time span involved in the identification was very short—4-5 hours between the crime and the photographic identification and less than two months from the date of the crime to date of trial.

**4. Constitutional Law § 31; Criminal Law § 66— pretrial photographic identification — availability of photographs to defendant**

While the better practice dictated that photographs used in a pretrial photographic identification should have been made available to the defense, failure to do so did not deny defendants the right to effective cross-examination; moreover, even assuming that the action of the trial judge was erroneous, where the identification of an accused is positive and certain and all other evidence points overwhelmingly to his guilt, such error is harmless beyond a reasonable doubt.

**5. Constitutional Law § 21; Searches and Seizures § 1— warrantless seizure of item in plain view — no constitutional prohibition**

The Constitution prohibits only unreasonable searches and seizures, and under circumstances requiring no search warrant because the contraband subject matter is in plain view, the constitutional immunity never arises.

**6. Searches and Seizures § 1— pistol in plain view — warrantless seizure proper**

If an item is in plain view of an officer who is at a place where he has a legal right to be, he may seize it without a warrant and the

item is properly admissible; therefore, a pistol was lawfully seized from defendants' automobile and properly admitted into evidence in a prosecution against them for armed robbery where an officer who arrived at the scene of defendants' arrest was standing beside defendants' car when he saw the butt of the pistol sticking out of a paper bag in the car and seized it.

7. **Searches and Seizures § 1— warrantless search of vehicle — propriety when probable cause exists**

The general rule is that, absent consent, a search warrant must accompany every search or seizure; however, a warrantless search of a vehicle capable of movement may be made by officers when they have probable cause to search and exigent circumstances make it impractical to secure a search warrant.

8. **Searches and Seizures § 1— warrantless search of car — probable cause**

Officers had probable cause to arrest defendants and make a warrantless search of their car, and fruits of the search were admissible in a prosecution against defendants where the evidence tended to show that defendants and the car had been adequately described to the officers, and the officers had reason to believe that, since the robbery had recently occurred, the robbers would still be in possession of the gun and stolen money.

9. **Constitutional Law § 36— statutorily prescribed sentence — no cruel and unusual punishment**

A sentence which is within the maximum authorized by statute is not cruel and unusual in a constitutional sense, unless the punishment provisions of the statute itself are unconstitutional, and so long as a sentence is within statutory limits the punishment actually imposed by a trial judge is a discretionary matter.

10. **Constitutional Law § 36; Robbery § 6— armed robbery — punishment statute — constitutionality**

The punishment provisions for armed robbery set forth in G.S. 14-87 are constitutionally valid.

DEFENDANTS appeal from judgments of *Collier, J.*, 5 April 1975 Criminal Session, RICHMOND Superior Court. Docketed and argued in this Court as Case No. 160 at the Fall Term 1976.

Defendants were charged in separate bills of indictment, proper in form, with the armed robbery of H. Lewis Braswell on 16 February 1976 in Richmond County.

H. Lewis Braswell testified that he and his wife operated a combination grocery-fabric store about three miles north of Ellerbe on U.S. Highway 220 in Richmond County. On 16 February 1976 two black men, later identified as defendants, drove up in a green Plymouth and entered the Braswell store about

thirty seconds apart. Defendant Legette went into the cloth room, followed by Wilson. When Mr. Braswell went back to the cash register in the grocery store, Wilson followed him and asked for some men's socks. While the socks were being shown, Wilson stuck a .38 caliber revolver in Mr. Braswell's side and told him to be quiet. Mr. Braswell requested the robbers not to hurt him or his wife and stated they could have all the money. The sum of $128.70 was taken from the cash register in the cloth shop and $156.18 was taken from the cash register in the grocery store. Defendants also took a money bag containing $1,060. Mr. Braswell and his wife were then tied together, blindfolded and ordered to lie on the floor, which they did. The robbers left and within three to five minutes Mr. Braswell heard a familiar voice at the door, jumped up and saw defendant Wilson outside the window in the back yard. The green Plymouth was just pulling out slowly in front of the driveway. Mr. Braswell grabbed his shotgun from the storeroom, ran out the front door, fired one shot at the fleeing car and another at defendant Wilson who had just gone over the fence surrounding the premises.

The money bag containing $1,060 was later found across the road approximately 130 yards from the store. The robbery was reported to the sheriff by telephone. Shortly thereafter a truck driver stopped at the store and gave Mr. Braswell the license number of the green Plymouth involved in the robbery.

The truck driver, Eugene Allen Sparkman, testified that he saw a black male running down the road and a white man running after him with a shotgun. The black male ran to and entered an automobile bearing a blue and yellow Pennsylvania license plate, number 3X0979. Mr. Sparkman turned his truck around and drove to Mr. Braswell's store to give him that information.

Nathan Grant, a deputy sheriff of Richmond County, was on duty at the time of the robbery. He observed a 1968 black-over-green Plymouth bearing Pennsylvania license number 3X0979 and pulled in behind it. Another deputy pulled his car in front of the Plymouth and the two officers stopped the fleeing vehicle. Defendants were taken out of the Plymouth, placed under arrest and searched. Defendant Legette had $67.00 in his pockets and $60.00 in his billfold. Inside the Plymouth in plain view, scattered about the floorboard and seat of the car,

was $16.82 in loose change. The officers seized 27 quarters, 43 dimes, 77 nickels and 192 pennies, most of which was visible from the outside of the car. The butt end of a revolver handle was sticking out of a paper bag on the floorboard on the passenger side of the car. This gun was seized by the officers.

A key, later determined to open a lock on the icebox in Mr. Braswell's store, was found in the console of the green Plymouth.

Mr. Braswell testified that the robbery occurred in the afternoon; that the fluorescent lighting in the store was on; that he was able to see the face of each robber clearly, and that the two robbers were in the store and observed by him for five to seven minutes. Mr. Braswell testified there was no doubt in his mind that the two defendants are the men who robbed him. He based his identification "on how they appeared at the time they committed the robbery."

Harold Legette, alias Kenny Brown, testified that he was born in Richmond County but lived in Pennsylvania. On the date he was arrested he was in Richmond County to visit his mother and to attend a relative's funeral. Defendant Wilson and wife accompanied him. On the day of his arrest he and defendant Wilson, after unsuccessfully attempting to find his sister for a brief visit, left Wadesboro intending to proceed to U.S. 1 north and return to Pennsylvania. They came to an intersection where the road was blocked by many police officers. There they were stopped, searched and arrested. Defendant Legette said he had never seen Mr. Braswell at that time and had never been in his grocery store located north of Ellerbe on Highway 220. He asked the officers what his arrest was all about but received no reply. He did not see any pistol at the scene. He stated that he had seen defendant Wilson at his home in Pennsylvania with a key similar to the one offered in evidence and if that key fit Mr. Braswell's icebox it was merely a coincidence.

On cross-examination Legette testified that the license and registration for his car was issued in the name of Kenny Brown; that under that name he had been convicted of robbery, robbery by assault and purse snatching, and pled guilty to robbery and burglary in 1968. He stated that "there was a gun like that in my car" but I didn't go anywhere with it. He said they put defendant Wilson's wife on a bus and sent her back

to Pennsylvania and admitted that he had recently been released from prison but didn't know whether he was on parole or not.

Defendant Forrest Lee Wilson, alias James Lee Wilson, testified that he was twenty-six years of age and lived in Bristol, Pennsylvania. He accompanied defendant Legette to North Carolina. On the day of his arrest they were getting ready to return to Pennsylvania and went to Wadesboro to visit Legette's sister before leaving. They failed to find her and were driving toward U.S. 1 to go north when the officers stopped them. This defendant said there was some change in the console of the green Plymouth to be used for paying tolls on their return trip. He denied having ever owned a pistol and stated that the first time he saw the pistol allegedly taken from their car was at the police station.

On cross-examination this defendant said his correct name was Forrest James Wilson and that he had known Legette about eight years. He admitted that he had been tried and convicted for a number of crimes including "no more than two robberies." He said he pled guilty to burglary and resisting arrest in 1969 and to larceny and receiving stolen goods in 1969. He admitted that he had served time for a parole violation on worthless checks and forgery and was presently on parole in the State of Pennsylvania. He denied robbing Mr. and Mrs. Braswell.

The jury convicted each defendant of armed robbery, and each was sentenced to a term of not less than forty years nor more than life, less credit for time spent in jail awaiting trial. Defendants appealed to the Court of Appeals, and we ordered the case transferred to the Supreme Court for initial appellate review. Errors assigned will be discussed in the opinion.

*Rufus L. Edmisten, Attorney General; William B. Ray, Assistant Attorney General; William W. Melvin, Deputy Attorney General, for the State of North Carolina.*

*Henry L. Kitchin, of the firm of Leath, Bynum, Kitchin & Neal, attorney for defendant appellant Legette; Charles B. Deane, Jr., of the firm of Jones & Deane, attorney for defendant appellant Wilson.*

HUSKINS, Justice.

Defendants' first assignment of error is based on the dual contention that (1) their in-court identification by the witness

Braswell was tainted by pretrial photographic identification and (2) the court erred in denying defendants the opportunity to view the photographs in question. Defendants argue that the findings and conclusions to the contrary are erroneous and that their motion to suppress the in-court identification should have been allowed.

The evidence developed on voir dire tends to show that four or five hours after the robbery Deputy Sheriff Grant took about a dozen photographs of black males to the Braswell store. These photographs were given to Mr. Braswell in random order, and he was requested to select the pictures of the two men who robbed him. He had already been told that suspects had been apprehended. Mr. Braswell recognized defendant Legette the first time he saw his picture and selected defendant Wilson's picture on the third viewing of the photographs. The hesitancy with respect to Wilson apparently resulted from the fact that Wilson was wearing glasses in the photograph which he had not been wearing at the time of the robbery. Mr. Braswell stated: "There is no doubt in my mind that the two defendants present in the court are the same two that I observed in the store on that occasion. No one suggested that I should pick out these two defendants as being the ones that robbed me. I am basing my identification of the defendants, Legette and Wilson, today on how they appeared at the time they committed the robbery. My identification is not influenced or affected by having seen the photographs of them." Mrs. Braswell separately identified the picture of Legette but asked the police to show her a picture of Wilson without the glasses. When this was done she identified Wilson as the second robber. Defendants offered no evidence on voir dire.

At this point in the voir dire defendants moved that the photographs be produced for their inspection. The district attorney replied, "If I decide to try to introduce the photographs, I'd be happy to let them see them at that time." The trial judge made no formal ruling on the motion but stated that he would examine the photographs *in camera* and if he found anything improper, he would turn them over to defense counsel for examination. The photographs were never offered in evidence, either on voir dire or before the jury, and consequently were never shown to defense counsel.

The trial judge made findings of fact substantially in accord with Mr. Braswell's testimony, there being no evidence

offered to the contrary. Based on these findings the court made two conclusions of law, to wit: (1) The photographic evidence was not improperly suggestive and (2) the in-court identification of defendants by the witness Braswell was independent in origin and based on observation of defendants at the time of the robbery. The motion to suppress the in-court identifications was thereupon denied and the evidence was admitted for consideration by the jury.

Defendants protest the court's refusal to permit them to view the photographs and contend such action infringed upon their right of confrontation and denied them due process of law in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, sections 19 and 23 of the Constitution of North Carolina.

[1]  In *Simmons v. United States,* 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968), identification by photograph was expressly approved and the Court held that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The *Simmons* test has been applied by this Court in many cases, including *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974) ; *State v. Morris,* 279 N.C. 477, 183 S.E. 2d 634 (1971) ; *State v. McVay and Simmons,* 277 N.C. 410, 177 S.E. 2d 874 (1970) ; *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892 (1970) ; *State v. Jacobs,* 277 N.C. 151, 176 S.E. 2d 744 (1970) ; *State v. Accor and Moore,* 277 N.C. 65, 175 S.E. 2d 583 (1970).

[2]  Factors to be considered in evaluating the likelihood of mistaken identification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972) ; *State v. Hunt,* 287 N.C. 360, 215 S.E. 2d 40 (1975) ; *State v. Henderson, supra.*

**[3]**   Here, the trial judge found that the witness Braswell had ample opportunity to view defendants at the time of the crime. The robbery occurred during "broad daylight" in a building well lighted with fluorescent lights. Mr. Braswell was only eight feet from Legette and engaged in a conversation with him. He observed defendant Wilson from a distance of two to three feet. Both defendants were in Braswell's presence for five to seven minutes. All these findings are supported by clear, competent and convincing evidence and therefore are conclusive and binding on appellate courts in this State. *State v. Hunt, supra; State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974) ; *State v. Morris, supra.* The findings in turn support the conclusion that Braswell had ample opportunity to view the defendants. See *Coleman v. Alabama,* 399 U.S. 1, 26 L.Ed. 2d 387, 90 S.Ct. 1999 (1970), where the United States Supreme Court held that a fleeting but "real good look" at a defendant, illuminated by car headlights, was sufficient.

There is no contention that Braswell failed to give the defendants close scrutiny while they were in his presence, and defendants concede the accuracy of Braswell's initial description of them. Moreover, both Braswell and his wife showed a high level of certainty in making a final photographic identification of defendants. Even though both expressed some initial uncertainty as to defendant Wilson because he was wearing glasses in the picture but wearing none during the robbery, this indecision was followed by positive identification after viewing a picture of Wilson with the glasses removed. Finally, Mr. Braswell's identification at trial was clear and unequivocal. The time span involved in the identification was very short— four to five hours between the crime and the photographic identification and less than two months from the date of the crime to date of trial.

When the *Simmons* test and the factors enumerated in *Neil v. Biggers, supra,* are applied to the facts in this case, there is small chance indeed that the photographs viewed by the witness Braswell led to misidentification of defendants. We hold that defendants' motion to suppress the in-court identification was properly denied and the evidence properly admitted.

**[4]**   The only remaining question under defendants' first assignment is whether defendants were denied due process and confrontation rights with respect to the in-court identification

by the refusal of the trial judge to permit them to examine the photographs. For the reasons which follow, we hold that they were not.

The right to confront and cross-examine one's accusers is central to an effective defense and a fair trial. *Greene v. Mc-Elroy*, 360 U.S. 474, 3 L.Ed. 2d 1377, 79 S.Ct. 1400 (1959). Under the Fourteenth Amendment those Sixth Amendment rights are applicable to the states. *Roberts v. Russell*, 392 U.S. 293, 20 L.Ed. 2d 1100, 88 S.Ct. 1921 (1968). It has been held to be "an abuse of discretion and a violation of constitutional rights to deny to a defendant the right to cross-examine a witness at all on 'a subject matter relevant to the witness' credibility.' " *Snyder v. Coiner*, 510 F. 2d 224 (4th Cir. 1975). Even a partial restraint of such right may, in some circumstances, effectively deny the right altogether. *United States v. Norman*, 402 F. 2d 73 (9th Cir. 1968). Moreover, where "the in-court identification is deemed admissible, defense counsel must be afforded the opportunity to cross-examine the prosecution upon any and all pretrial confrontations." *United States ex rel. Regazzini v. Brierley*, 321 F. Supp. 440 (W.D. Pa. 1970). Even so, on the facts in this case, we hold that defendants have not been denied the opportunity to cross-examine the witness Braswell. True, defense counsel were denied some assistance which the photographs used in the out-of-court identification might have provided. While the better practice dictates that those photographs should have been made available to the defense, failure to do so did not deny defendants the right to effective cross-examination. This conclusion is supported by the following language, dealing with a fact situation strikingly similar to the facts here, found in *Simmons v. United States, supra:*

> "Although the pictures might have been of some assistance to the defense, and although it doubtless would have been preferable for the Government to have labeled the pictures shown to each witness and kept them available for trial, we hold that in the circumstances the refusal of the District Court to order their production did not amount to an abuse of discretion. . . ."

*Accord, United States v. Zurita*, 369 F. 2d 474 (7th Cir. 1966), *cert. denied*, 386 U.S. 1023 (1967) ; *Ahlstedt v. United States*, 325 F. 2d 257 (5th Cir. 1963), *cert. denied*, 377 U.S. 968 (1964). We find this reasoning persuasive on the issue presented here.

State v. Legette

Moreover, even assuming that the action of the trial judge was erroneous, we hold that where, as here, the identification of an accused is positive and certain and all other evidence points overwhelmingly to his guilt, such error is harmless beyond a reasonable doubt. *Schneble v. Florida,* 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056 (1972) ; *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967). We see no reasonable possibility that defendants' lack of opportunity to examine the photographs might have contributed to their conviction. Nor does it appear that a different result likely would have ensued had the trial court, as it should have done, permitted defense counsel to examine the photographs in question. Where no prejudice results the event is considered harmless. *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972) ; *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115 (1971) ; *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). Defendants' first assignment is overruled.

Defendants contend the trial judge erred in failing to suppress items of evidence seized from the defendants' green Plymouth at the time of their arrest. Their second assignment of error is based on this contention.

The court conducted a voir dire on the motion to suppress. Evidence on the voir dire reveals the following sequence of events relative to the challenged search and seizure. On the day of the robbery Deputy Sheriff Grant received a report of it over his radio. That report contained a description of the two suspects, a description of the car and its Pennsylvania license number. The report informed Deputy Grant that the suspects were armed with a revolver. Around 3 or 4 p.m. Deputy Grant spotted the suspects in the described car, radioed for assistance and, with the aid of another deputy's car, forced the suspects to stop. Defendants immediately got out of their car, whereupon, with drawn guns, Deputy Grant and Deputy Norton advised defendants they were under arrest. Defendant Legette submitted peacefully, while defendant Wilson struggled briefly with Deputy Norton. Meanwhile, Detective Sam Jarrell of the Rockingham City Police Department, having heard the report of the robbery, arrived on the scene. He saw the butt of a pistol handle sticking out of a paper bag in defendants' car and seized it. Inside the Plymouth in plain view, scattered about the floorboard and seat of the car, was a lot of loose change which Deputy Grant began to

pick up. In the course of that activity he found in the console of the Plymouth a key and a bill for some tires purchased in Georgia. It was later determined that the key fit and unlocked a lock on an icebox in Mr. Braswell's store.

Since the officers had no search warrant and defendants at no time consented to the search, defendants say the search was unlawful and the gun, the key and the bill inadmissible in evidence.

[5, 6] The Constitution prohibits only unreasonable searches and seizures. *Carroll v. United States,* 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925) ; *Elkins v. United States,* 364 U.S. 206, 4 L.Ed. 2d 1669, 80 S.Ct. 1437 (1960). Under circumstances requiring no search because the contraband subject matter is in plain view, the constitutional immunity never arises. *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970) ; *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968). If the item is in plain view of an officer who is at a place where he has a legal right to be, he may seize it without a warrant and the item is properly admissible. *Harris v. United States,* 390 U.S. 234, 19 L.Ed. 2d 1067, 88 S.Ct. 992 (1968) ; *Ker v. California,* 374 U.S. 23, 10 L.Ed. 2d 726, 83 S.Ct. 1623 (1963) ; *State v. Rigsbee,* 285 N.C. 708, 208 S.E. 2d 656 (1974) ; *State v. Allen,* 282 N.C. 503, 194 S.E. 2d 9 (1973). Here, there is ample evidence that the butt end of the pistol was readily visible to Officer Jarrell as he stood outside the Plymouth. The "plain view" doctrine has been applied by this Court in two recent cases with fact patterns nearly identical. See *State v. Smith,* 289 N.C. 143, 221 S.E. 2d 247 (1976), and *State v. Dobbins,* 277 N.C. 484, 178 S.E. 2d 449 (1971). Based on these authorities, we hold the pistol was lawfully seized and properly admitted into evidence.

Admission of the key and the bill for tires presents a different question because there is no evidence that these items were in plain view. Rather, testimony on voir dire indicates they were not and, in fact, were found during a general search of the car. Nevertheless, for reasons which follow, we hold those items were properly admitted.

[7] The general rule is that, absent consent, a search warrant must accompany every search or seizure. Even so, an exception to the warrant requirement has evolved in a tortuous line of decisions by the United States Supreme Court whereby a warrantless search of a vehicle capable of movement may be made by

officers when they have probable cause to search and exigent circumstances make it impractical to secure a search warrant. *See generally* Comment, Warrantless Searches and Seizures of Automobiles and the Supreme Court from *Carroll* to *Cardwell: Inconsistently Through the Seamless Web*, 53 N.C. L. Rev. 722, 726-747 (1975).

In *Carroll v. United States, supra,* the Court held a search to be valid where, although defendants were not arrested, probable cause existed to believe that the car contained contraband liquor and it was "not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

*Chambers v. Maroney*, 399 U.S. 42, 26 L.Ed. 2d 419, 90 S.Ct. 1975 (1970), involved a situation where, following a robbery, the police were given descriptions of four suspects and the car in which they fled. Shortly thereafter the suspects and the car were spotted and the suspects arrested. Police drove the car to the station and there, without obtaining a warrant, searched it. This search was upheld under the motor vehicle exception enunciated in *Carroll.* The Court said the police had probable cause to arrest the suspects and to search the car for guns and stolen money, stating that the car "could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search." The Court held that this exigent circumstance existed even after the car had been driven to the police station.

[8] On the facts before us in this case, we hold there was probable cause to arrest defendants and to search the car. Defendants and the car had been adequately described to the officers and they had reason to believe that, since the robbery had recently occurred, the robbers would still be in possession of the gun and the stolen money. The car certainly presented a "fleeting target" for a search. The fruits of the search were properly admitted into evidence.

Defendants' third assignment of error is grounded on the contention that the prosecution was permitted to establish essential elements of the crime by the use of leading questions. Only two questions are challenged. They are so innocuous that discussion of them is not required. This assignment is overruled.

Defendants except to the denial of their motions for judgment as of nonsuit and to set the verdicts aside. Their fourth and fifth assignments of error are grounded on these exceptions.

These motions are predicated on exclusion of the in-court identification and suppression of the items seized at the time of the arrest. Since the in-court identification was properly allowed and suppression of the items seized was properly denied, these motions must fail because they have no foundation to support them.

Defendants also object to a portion of the charge recapitulating the evidence with respect to the key and the tire bill. This alleged error was not brought to the attention of the trial judge before the jury retired and thus is deemed waived. *State v. Thomas,* 284 N.C. 212, 200 S.E. 2d 3 (1973) ; *State v. Tart,* 280 N.C. 172, 184 S.E. 2d 842 (1971).

Defendants' final assignment of error is grounded on the contention that a sentence of forty years to life imprisonment for armed robbery is cruel and unusual punishment prohibited by both state and federal constitutions.

G.S. 14-87(a) provides that any person who is convicted of robbery with a firearm or other dangerous weapon "shall be punished by imprisonment for not less than five years nor more than life imprisonment in the State's prison." Subsection (b) of this statute provides that any person who has been previously convicted of robbery with a firearm or other dangerous weapon, either in this State or in any other state or the District of Columbia, "upon conviction for a second or subsequent violation of G.S. 14-87(a), shall be guilty of a felony and shall be punished without benefit of parole, probation, suspended sentence, or any other judicial or administrative procedure except such time as may be allowed as a result of good behavior . . . . "

[9]  We have consistently held that a sentence which is within the maximum authorized by statute is not cruel and unusual in a constitutional sense, unless the punishment provisions of the statute itself are unconstitutional. *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296 (1972) ; *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969) ; *State v. Robinson,* 271 N.C. 448, 156 S.E. 2d 854 (1967) ; *State v. Greer,* 270 N.C. 143, 153 S.E. 2d 849 (1967) ; *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966). So long as a sentence is within statutory limits the punishment

actually imposed by a trial judge is a discretionary matter. *State v. Slade,* 291 N.C. 275, 229 S.E. 2d 921 (1976) ; *State v. Garris,* 265 N.C. 711, 144 S.E. 2d 901 (1965).

[10] It is within the province of the General Assembly to prescribe maximum punishments which may be imposed upon those convicted of crime. It is not for us to say that the policy judgment of the General Assembly with respect to punishment for armed robbery is wrong. Armed robbery is a crime of violence and those who take the risk must assume the consequences involved. We hold the punishment provisions of G.S. 14-87 are constitutionally valid. The discretionary sentences imposed by the trial court will not be disturbed.

Prejudicial error has not been shown. The verdicts and judgments must therefore be upheld.

No error.