STATE OF NORTH CAROLINA v. THOMAS LEE DUNLAP

No. 63

(Filed 4 December 1979)

**1. Criminal Law § 66.20 — identification of defendant — findings on voir dire — summarization of all facts unnecessary**

There was no merit to defendant's contention that he was denied a fair hearing on his motion to suppress identification testimony because the trial judge in his findings of fact failed to mention the publicity surrounding defendant's arrest, since the trial court conducted a lengthy voir dire and thereafter entered extensive findings of fact and concluded that each of the three witnesses had ample and sufficient opportunity to see, observe and know defendant as a customer of the finance company which employed them prior to the time of the robbery; their in-court identification was based on their independent knowledge of defendant and was not tainted by subsequent events; the photographic lineup procedures used in identifying defendant were not impermissibly suggestive; and the trial court was not required to summarize every single fact presented at voir dire.

### 2. Criminal Law § 66.9 — photographic identification — no suggestiveness

In a prosecution of defendant for the armed robbery of finance company employees, the fact that each of three identifying witnesses, prior to selecting defendant's picture from a photographic lineup, had either heard defendant's name on the radio or read it in the newspaper as being a suspect in the case and the fact that defendant was a former customer at the finance company did not render the photographic identification procedures impermissibly suggestive, since the witnesses had ample opportunity to view defendant for at least ten minutes at the time of the crime; they could describe his appearance in great detail; each of the witnesses' prior descriptions of defendant was accurate and conformed both to the real evidence confiscated and to each other's testimony; each demonstrated certainty in identifying defendant's photograph and person; and the length of time between the crime and the confrontation was brief, being a matter of three days between the crime and the photographic lineup and three months from crime to trial.

### 3. Criminal Law § 66.9 — photographic identification — no suggestiveness

There was no merit to defendant's contention that out-of-court identification procedures were unduly suggestive because the witnesses were told a suspect was in the photographic lineup prior to their viewing it.

### 4. Criminal Law § 66.1 — no pretrial identification procedures — identification at trial proper

In a prosecution of defendant for armed robbery of finance company employees, the trial court did not err in allowing a customer who had witnessed the robbery to identify defendant at trial as the perpetrator without having earlier been tested by a photographic or physical lineup.

### 5. Constitutional Law §§ 28, 79; Criminal Law § 138.2 — armed robbery — life sentence without parole — no denial of equal protection — no cruel and unusual punishment

Where defendant was convicted of two counts of assault with a firearm upon a law enforcement officer and one count of robbery with a firearm, second offense, the sentence of life imprisonment without benefit of parole was not a denial of equal protection and did not constitute cruel and unusual punishment, since (1) the punishment statute involved did not prescribe different punishment for the same acts committed under the same circumstances by persons in like situations and thus did not deny defendant equal protection of the laws, and (2) the punishment imposed was that prescribed by G.S. 14-87, and a sentence within the maximum authorized by law is not cruel and unusual punishment.

### 6. Criminal Law § 134.1 — sentence without parole — remand for clarification of sentence

Where the jury clearly found defendant guilty of armed robbery, second offense, and G.S. 14-87(b) provides that one so convicted shall be sentenced without benefit of parole, but the judgment and commitment order made no mention of sentence without parole and did not specify the subsection under which defendant was sentenced, the case is remanded for a clarification of the sentence.

DEFENDANT appeals from judgment of *Kirby, Judge*, entered at the 22 January 1979 Schedule "A" Session of Superior Court, MECKLENBURG County.

Defendant was indicted and convicted of two counts of assault with a firearm on a law enforcement officer and one count of armed robbery, second offense. The charges were consolidated for judgment and defendant was sentenced to imprisonment for the term of his natural life.

Evidence for the State tended to show that at approximately 1:30 p.m. on 27 October 1978, a black male entered the offices of C & S Finance Services Company in Charlotte wearing a navy blue toboggan, sunglasses, a light-colored smock over a dark sweater and blue and white checked polyester pants. The man stated that he wished to apply for a loan and was told to wait until the office manager, Reid W. Carter, could speak with him. When Carter was able to talk, some ten minutes later, the robber went into Carter's office, pulled a handgun and herded Carter and another employee, Don Bowen, out of their cubicles into the outer office where the cashier, Mary Ann Le Carpentier, was sitting. When Ms. Le Carpentier saw the robber pull his gun, she hit a silent alarm button under her desk. Lester Horton, a customer of C & S who had been sitting in Bowen's office, was told to remain where he was by the gunman. He did so and observed subsequent events from this inner office.

At gunpoint, Carter gave the robber approximately $300.00 out of the office cash drawer. When the robber threatened to kill Ms. Le Carpentier, Carter and Bowen gave him money from their billfolds. Le Carpentier, Carter, Bowen and Horton all identified defendant as the robber. Le Carpentier, Carter and Bowen remembered him as a previous customer of C & S Finance.

At 1:40 p.m., Officer J. D. Ensminger received a call on his car radio that a robbery was in progress at C & S Finance. He proceeded in that direction, parked his car in front of the business, got out and approached the front door. He saw a black male standing inside the office with his back to the officer and his arms forward. The man spun around to his left, came "centerways into the door," brought his snub-nose revolver down, and pointed it at the officer. Shouting "Freeze," he fired one shot from about a three foot distance at Ensminger. Ensminger turned

and ran along the side of the office building while the gunman fired a second shot at him. Ensminger then circled the building and saw a black male wearing a white top, blue toboggan and sunglasses run across the street. As the officer followed this man, he saw another policeman, K. D. Helms, drive up in a patrol car. Officer Ensminger went on, rounded another building on foot, and saw a bluish-gray Camaro angle parked behind that building. A man wearing a blue sweat suit with red stripes and a toboggan was about 40 feet away from the car. Next to the car, standing at the left rear, was a man with a snub-nose revolver in his hand. Ensminger saw this man squat down behind the quarter panel of the Camaro and aim in the direction of Officer Helms who had just driven around in the patrol car. Ensminger cocked his revolver and aimed at the back of the gunman's head but apparently did not shoot. The gunman got into the driver's door of the automobile and Ensminger dodged behind a car approximately two spaces north. The gunman fired his weapon at Officer Helms. As Officer Helms returned the fire, Ensminger, unobserved by the gunman, moved against the wall of a building some 18 feet away and fired three times at the suspect. The person in the Camaro looked over at him and they, too, exchanged shots. Ensminger was wounded in the exchange. Officer Helms then fired a shotgun at the car and the suspect's body slumped over the steering column and rolled out onto the pavement. After waiting two or three minutes, the officers went up to the person who had fallen from the car and found him to be the defendant, Thomas Lee Dunlap.

A .38 caliber revolver with five spent rounds, a pair of blue and white checked pants, a ski mask and a jacket with $327.00 in the pocket were recovered from the car. Testimony indicated that the defendant had once been employed at the Radisson Plaza Hotel as a cook. The smock-type jacket and trousers used in the robbery and found inside the Camaro were the same uniform items worn by cooks at the Radisson when defendant worked there.

A certified copy of defendant's prior conviction of armed robbery in Richmond County was also entered into evidence.

The defendant testified that he did not rob the C & S Finance Company, but that he had been napping in his car when

another man ran up and threw the clothes and other things into his car. He admitted he had been convicted of armed robbery in Richmond County.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Amos C. Dawson III for the State.*

*Tom Dickinson, Assistant Public Defender, for the defendant.*

CARLTON, Justice.

On appeal, defendant presents four assignments of error: (1) The trial court erred in denying defendant's motions to suppress the out-of-court and in-court identifications of the defendant by Le Carpentier, Carter and Bowen, (2) the trial court erred in denying defendant's motion to suppress the in-court identification of the defendant by the witness Horton, (3) the sentence of life imprisonment without benefit of parole constitutes a denial of defendant's rights to equal protection of the law, (4) and constitutes cruel and unusual punishment. We reject the defendant's contentions and affirm the trial court.

I.

Defendant attacks both the substance and the procedure in the trial court's ruling the witnesses' identification of him admissible. Defendant first contends that pretrial publicity tainted identification procedures, raising the strong likelihood of misidentification by the witnesses Le Carpentier, Carter, and Bowen. All three recognized the robber as someone they had seen before in the C & S office; all three heard or read defendant's name in news reports as the man arrested for the crime and all three recognized the name as being one of their customers. Each subsequently identified a photograph of defendant as being the robber. In addition, prior to her identification of defendant's picture in a photographic lineup, Le Carpentier pulled defendant's customer file at C & S. The file did not contain a photograph. Defendant argues that because they recognized his name as that of a customer, these witnesses were predisposed to pick defendant out of a photographic lineup as the robber.

[1] Defendant additionally contends he was denied a fair hearing on his suppression motion because the trial judge in his findings of fact failed to mention the publicity surrounding defendant's ar-

rest. Defendant argues this means the trial court failed to make findings of fact sufficient to support his ruling the identification evidence was admissible.

We first expressly reject defendant's argument that he was denied a fair hearing on the suppression motions. The record before us discloses that the trial court conducted a lengthy *voir dire* hearing and thereafter entered extensive findings of fact and concluded that first, each of the three witnesses had ample and sufficient opportunity to see, observe and know the defendant as a customer of C & S prior to the time of the robbery; second, that their in-court identification was based on their independent knowledge of the defendant and was not tainted by subsequent events; and further that the photographic lineup procedures used in identifying the defendant were not impermissibly suggestive.

The fact that these findings and conclusions did not mention publicity surrounding defendant's arrest is not, as the defendant contends, reversible error.

> When the admissibility of in-court identification testimony is challenged on the ground it is tainted by out-of-court identification(s) made under constitutionally impermissible circumstances, the trial judge must make findings as to the background facts to determine whether the proffered testimony meets the tests of admissibility. When the facts so found are supported by competent evidence, they are conclusive on appellate courts.

*State v. Covington*, 290 N.C. 313, 322, 226 S.E. 2d 629, 637 (1976); *State v. Tuggle*, 284 N.C. 515, 520, 201 S.E. 2d 884, 887 (1974); *State v. McVay* and *State v. Simmons*, 277 N.C. 410, 417, 177 S.E. 2d 874, 878 (1970).

This does not mean that the findings of fact must summarize *all* the evidence presented at *voir dire*. Indeed, if there is no conflicting testimony about the facts alleged, it is permissible for the judge to admit identification evidence without making specific findings of fact at all, although it is the better practice for him to make them. *State v. Covington, supra* at 325, 226 S.E. 2d at 638. *See also, State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561 (1971) (admissibility of a confession); *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511 (1968) (same). In light of such a rule, we see no reason why

a trial judge should be compelled to summarize every single fact presented at *voir dire*. It is enough that the findings and conclusions are supported by substantial and uncontradicted evidence as they are here. In such a case, the findings are binding on us on appeal. *State v. Tuggle, supra.*

Defendant's other contention under this assignment of error is that the identification testimony of witnesses Le Carpentier, Carter and Bowen was inadmissible because as a matter of law it was elicited under conditions violating his due process rights. Defendant relies on the principle established by the United States Supreme Court in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968). There, the standard to be applied in determining the admissibility of an in-court identification which is preceded by a pretrial photographic identification was stated to be whether the pretrial procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 384, 88 S.Ct. at 971, 19 L.Ed. 2d at 1253. *See also Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967); *State v. Long*, 293 N.C. 286, 237 S.E. 2d 728 (1977); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), *death sentence vacated*, 428 U.S. 902, 96 S.Ct. 3202, 49 L.Ed. 2d 1205 (1976). The rule is equally applicable to all pretrial identification procedures. *State v. Cobb*, 295 N.C. 1, 8, 243 S.E. 2d 759, 764 (1978).

[2] Defendant essentially asserts there were two instances of prejudicially suggestive behavior on the part of police in the pretrial identification process. First, he argues that each of these three witnesses, prior to selecting defendant's picture from a photographic lineup, had either heard defendant's name on the radio or read it in the newspaper as being a suspect in the case. Because defendant had been a customer at C & S in the past and because each of the three witnesses had seen him on previous occasions, he argues that each of the witnesses "[was] primed to pick out the man who had made previous visits to the office and had his account flagged." Brief for Defendant at 9.

The analysis used in determining admissibility of identification testimony where the defendant protests was articulated in *State v. Legette*, 292 N.C. 44, 231 S.E. 2d 896 (1977). There, following the holding of the United States Supreme Court in *Neil v.*

*Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. 2d 401 (1972), we stated,

> Factors to be considered in evaluating the likelihood of mistaken identification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

*State v. Legette, supra* at 51, 231 S.E. 2d at 900-01. *Accord, State v. Hunt,* 287 N.C. 360, 215 S.E. 2d 40 (1975); *State v. Henderson, supra.*

This five-factor analysis applied to the facts in this record reveals: (1) These witnesses had ample opportunity to view the defendant for at least ten minutes in clear and unobstructed circumstances, (2) their testimony indicates that even though they may have been very concerned about the gun the robber brandished, each of them also demonstrated attentiveness to his physical characteristics and could describe him, even to the kind of beard growth he had on his face, (3) each of the witnesses' prior descriptions of the defendant was accurate and conformed both.to the real evidence confiscated and to each other's testimony, (4) each of the witnesses demonstrated certainty at all times in identifying the defendant's photograph and person, and (5) the length of time between the crime and the confrontation was brief, being a matter of some three days between the crime and the photographic lineup and three months from crime to trial.

Furthermore, neither news media accounts nor defendant's file at C & S contained photographs. The publicity merely allowed the witnesses to recall defendant's name, not his physical identity. There is simply nothing to suggest that the pretrial photographic identification procedures were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

[3] Defendant's second contention under this point is that out-of-court identification procedures were unduly suggestive because the witnesses were told a suspect was in the photographic lineup prior to their viewing it. We do not agree. It is inconceivable that

any witness called to view a lineup, photographic or in person, would not assume that the police have a suspect in the group. "A mere confirmation of this assumption does nothing to indicate to the witness which of the participants the suspect is. Standing alone, it does not taint the legality of the lineup." *State v. Davis*, 297 N.C. 566, 571-72, 256 S.E. 2d 184, 187 (1979). Defendant's motion to suppress the identification testimony of these three witnesses was properly denied and their identification evidence properly admitted.

## II.

[4] Defendant next contends that the trial court erred in denying his motion to suppress the identification testimony of Lester Horton, a customer of C & S at the time of the robbery. This witness testified that he looked at some photographs the same day as the robbery but picked out no one, that he had not talked to any police officer since that day, and that the first time he had seen defendant since the day of the robbery was in court at the time of trial. Defendant argues that since this witness had never been tested by a photographic or physical lineup prior to the *voir dire* hearing, his in-court identification of defendant was the result of defendant's being shown to a person *singly* for purposes of identification. This violates the principle stated in *Stovall v. Denno, supra*, that "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." 388 U.S. at 302, 87 S.Ct. at 1972, 18 L.Ed. 2d at 1206. *See also U.S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967).

Defendant's contention here was expressly rejected by this Court in *State v. Tyson*, 278 N.C. 491, 180 S.E. 2d 1 (1971). There, witnesses had seen neither defendant prior to trial except at the preliminary hearing some weeks before. At the preliminary hearing, both recognized one of the defendants as he entered the courtroom with a deputy sheriff and took his seat alone in the prisoner's box. In rejecting defendant's argument in *Tyson* that this was impermissibly suggestive, this Court stated,

> To accept [defendant's contention] as a correct application of the Fourteenth Amendment to the United States Constitution would, of course, make it impossible for the victim or any other eye witness to a crime to testify that he recognizes

the defendant as its perpetrator, without first having, for each witness, some sort of line-up procedure to test his recollection of the perpetrator's appearance. This is not required.

*Id.* at 496, 180 S.E. 2d at 4.

Defendant concedes that this case is indistinguishable from *Tyson, supra.* He requests, however, that we overrule *Tyson.* This we refuse to do. It would be patently absurd for us to hold in effect that witnesses come to court predetermined to identify whoever sits at defense table as the perpetrator of a crime which they witnessed. Such a position overlooks, as stated in *Tyson,* "the obvious truth that when the victim of a crime comes to court to testify, his motivation is his desire to bring the actual wrongdoer to justice, which purpose would be defeated by his identification of someone else as the perpetrator of the crime." 278 N.C. at 496, 180 S.E. 2d at 4.

The trial court held a lengthy *voir dire* on this question and made extensive findings of fact and conclusions of law supported by adequate and uncontradicted evidence which are binding upon us on appeal. *State v. Tuggle, supra.*

This assignment of error is overruled.

### III.

[5] We now turn to defendant's final two contentions that his sentence of imprisonment for life without benefit of parole is a denial of equal protection and constitutes cruel and unusual punishment. The record discloses that defendant's convictions of two counts of assault with a firearm upon a law enforcement officer and one count of robbery with a firearm, second offense, were consolidated for judgment and defendant was sentenced to the State's prison for the term of his natural life. While the judgment and commitment made no reference to parole eligibility, they did indicate that defendant was convicted of a violation of G.S. 14-87 and G.S. 14-34.2. G.S. 14-87(a) provides that any person convicted of robbery with a firearm "shall be punished by imprisonment for not less than seven years nor more than life imprisonment in the State's prison." Subsection (b) of this statute[1]

---

1. We note that G.S. 14-87 has been repealed and replaced effective 1 July 1980. 1979 Session Laws c. 760, s. 5; 1979 Adv. Legis. Serv., Pamphlet 7 at 138.

provides that any person who has been previously convicted of robbery with a firearm or other dangerous weapon, either in this State or in any other state or the District of Columbia, "upon conviction for a second or subsequent violation of G.S. 14-87(a), shall be guilty of a felony and shall be punished without benefit of parole, probation, suspended sentence, or any other judicial or administrative procedure except such time as may be allowed as a result of good behavior. . . ." Defendant contends that we should declare subsection (b) unconstitutional as a denial of equal protection and as constituting cruel and unusual punishment in violation of the eighth amendment.

No such constitutional violations are present here. This Court has previously upheld the constitutionality of G.S. 14-87. In *State v. Legette, supra*, and *State v. Jenkins*, 292 N.C. 179, 232 S.E. 2d 648 (1977), defendants, as here, attacked G.S. 14-87(b) as being cruel and unusual punishment in violation of the eighth amendment. We held that where a sentence is within the maximum authorized by law, the sentence is not cruel and unusual punishment. *See also State v. Cameron*, 284 N.C. 165, 200 S.E. 2d 186 (1973), *cert. denied*, 418 U.S. 905, 94 S.Ct. 3195, 41 L.Ed. 2d 1153 (1974); *State v. Cradle*, 281 N.C. 198, 188 S.E. 2d 296, *cert. denied*, 409 U.S. 1047, 93 S.Ct. 537, 34 L.Ed. 2d 499 (1972); *State v. Caldwell*, 269 N.C. 521, 153 S.E. 2d 34 (1967). In *State v. Jenkins, supra*, defendant further attacked his sentence as being a denial of equal protection. We held, under the circumstances of that case, that punishment imposed under G.S. 14-87 was not a violation of equal protection.

Defendant would undoubtedly contend that the cited cases did not deal expressly with his argument concerning the denial of parole eligibility when sentence imposed was life. We dispose of that contention on cruel and unusual punishment grounds by simply noting that it is the punishment fixed by the applicable statute and that the punishment is not disproportionate to the offense for which defendant was convicted. *See, e.g., State v. Benton*, 276 N.C. 641, 174 S.E. 2d 793 (1970). As to the contention that punishment without parole eligibility denies defendant equal protection of the laws, the rule is well established that "equal protection of the laws is not denied by a statute prescribing the punishment to be inflicted on a person convicted of a crime unless it prescribes different punishment for the same acts committed

under the same circumstances by persons in like situations." *State v. Benton, supra* at 659-60, 174 S.E. 2d 793, 805 (1970), and authority cited therein. G.S. 14-87(b) denies parole eligibility for *all* those convicted of a second or subsequent violation of G.S. 14-87(a). It is the province of the General Assembly, not ours, to prescribe this special punishment for this validly selected class of crimes. This assignment of error is overruled.

[6]    We do note from the record, however, that the judgment and commitment order makes no mention of sentence without parole. Indeed, it does not specify the subsection under which defendant was sentenced, even though the jury clearly found defendant guilty of armed robbery, *second offense*, and G.S. 14-87(b) provides that one so convicted *shall* be sentenced without benefit of parole. In light of this we cannot be certain that the trial court was aware of the denial of parole eligibility in G.S. 14-87(b), and so may have imposed a longer sentence than it intended. In other words, we are uncertain that the trial court intended to impose a life sentence without benefit of parole. We therefore remand to the Superior Court of Mecklenburg County. That court is directed to bring defendant before Judge Kirby for clarification of defendant's sentence.

We finally note that while we have discussed each of defendant's assignments of error due to the seriousness of his sentence, and have addressed the merits of each, defendant has failed to comply with the requirements of Rule 28(b)(3) of the North Carolina Rules of Appellate Procedure by failing to set forth after each question presented a reference to the assignments of error and exceptions pertinent to the question. We remind the Bar that the Rules of Appellate Procedure are mandatory and that an appeal may be dismissed for failure to comply with them. *See State v. Benton, supra.*

In the trial below, we find

No error in guilt determination.

Remanded for clarification of sentence.