# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs July 7, 2015 at Jackson

## STATE OF TENNESSEE v. SHELBY LESEAN HARRIS

**Appeal from the Circuit Court for Marshall County**
**No. 12CR171     F. Lee Russell, Judge**

---

**No. M2014-01706-CCA-R3-CD – Filed November 5, 2015**

---

The Defendant, Shelby Lesean Harris, was indicted for one count of selling .5 grams or more of cocaine and one count of delivery of .5 grams or more of cocaine. See Tenn. Code Ann. § 39-17-417. Following a jury trial, the Defendant was convicted of the lesser-included offenses of facilitation of the sale of .5 grams or more of cocaine and facilitation of the delivery of .5 grams or more of cocaine. See Tenn. Code Ann. § 39-11-403. The trial court merged the Defendant's conviction for facilitation of the delivery of .5 grams or more of cocaine into his conviction for facilitation of the sale of .5 grams or more of cocaine. The trial court then sentenced the Defendant as a Range II, multiple offender to eight years and six months. On appeal, the Defendant contends (1) that the trial court erred by denying his motion to suppress the in-court identification of the Defendant by two confidential informants; and (2) that the evidence was insufficient to sustain his convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Michael Auffinger, Smithville, Tennessee (at trial and on appeal); and Robert Allen Dalton, Jr., Lewisburg, Tennessee (at trial), for the appellant, Shelby Lesean Harris.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Robert James Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

## I. Suppression Hearing

The Defendant and his co-defendant, Claudale Armstrong, were indicted as a result of a controlled purchase of cocaine arranged by two confidential informants, Doris Francene McCall and Wanda Griffin, working with the Seventeenth Judicial District Drug Task Force. The State alleged that the Defendant drove Mr. Armstrong to Ms. McCall's house where Mr. Armstrong provided Ms. McCall with crack cocaine in exchange for $150.

The Defendant was originally scheduled to stand trial for these charges in July 2013. Prior to trial, the Defendant filed a motion to preclude Ms. McCall from making any in-court identification of the Defendant. The prosecutor represented to the trial court and defense counsel that Ms. McCall could not identify the Defendant as the driver and that the Defendant's motion was moot. Ms. McCall was the first witness for the State and, at the conclusion of her direct examination, identified the Defendant as the driver. The Defendant requested a mistrial, which the trial court ultimately granted.

Prior to the start of the Defendant's second trial, defense counsel orally moved the trial court to preclude Ms. McCall and Ms. Griffin from making an in-court identification of the Defendant. Defense counsel argued that Ms. McCall and Ms. Griffin's identifications of the Defendant would be tainted by a statement made by Special Agent Travis Childers of the Seventeenth Judicial District Drug Task Force shortly after the controlled buy that he believed the driver "was 'Tiny' Harris." The trial court conducted a pre-trial hearing on this matter at which Ms. McCall and Ms. Griffin testified.

Ms. McCall testified that on July 19, 2011, she was acting as a confidential informant and purchased crack cocaine from the co-defendant, Mr. Armstrong. The purchase occurred in front of Ms. McCall's home. Mr. Armstrong was in the passenger seat of a dark SUV parked on the street in front of her house. The passenger-side window was down, and Ms. McCall reached into the SUV and exchanged $150 for crack cocaine. Ms. McCall testified that she knew Mr. Armstrong and recognized him as the person who sold her the cocaine.

Ms. McCall testified that she saw the driver of the SUV but that she did not know who he was. Ms. McCall further testified that when she saw the driver, he was looking right at her for several seconds, that she was only three or four feet away from him, that it was "a bright, sunny day," that she "was calm," that the passenger window was down, and that there was nothing obstructing her view of the driver.

Ms. McCall testified that, after the purchase, she returned to her house where Ms. Griffin and Agent Childers had been observing the exchange. Ms. McCall recalled that Agent Childers asked her who the driver of the SUV was and that she told him that she

did not know. Agent Childers then said that he believed the driver "was 'Tiny' Harris." Ms. McCall testified that Ms. Griffin told her the same thing. Ms. McCall also testified that she was never shown a photograph or lineup of the Defendant.

Ms. McCall admitted that, when she testified at the original trial, she knew the Defendant's name and that he went by the nickname of "Tiny." However, Ms. McCall testified that she did not base her identification on what Agent Childers had told her or knowing the Defendant's name. Rather, Ms. McCall testified that she could "identify [the Defendant based on his] face only." Ms. McCall admitted that she could not remember what clothes the driver was wearing or other details of his appearance that day, but she insisted that, when she testified at the Defendant's first trial, she recognized "[h]is face" and realized he was the driver.

Ms. Griffin testified that she was also working as a confidential informant on July 19, 2011, and that she was in Ms. McCall's bedroom with Agent Childers during the controlled purchase. Ms. Griffin recalled that Ms. McCall's bedroom window faced the street and that the SUV was parked "straight across" from the window. Ms. Griffin testified that Ms. McCall had a "small yard" and that she was able to see into the SUV. Ms. Griffin also recalled that the passenger window was down and that the SUV's other windows were not tinted.

Ms. Griffin testified that she knew Mr. Armstrong and that she knew the Defendant because she had seen him with Mr. Armstrong on several occasions. Ms. Griffin further testified that the Defendant was the driver of the SUV, that she saw his face, and that she recognized him on sight. Ms. Griffin reiterated that she could "definitely see who it was" driving the SUV and that she "knew it was" the Defendant. Ms. Griffin also testified that she told Agent Childers that the Defendant was driving when she saw the SUV pull up.

At the conclusion of the testimony, defense counsel argued to suppress Ms. McCall's in-court identification of the Defendant because it was tainted by Agent Childers's statement that he believed the Defendant was the driver. Defense counsel also argued to suppress any in-court identification by Ms. Griffin because it was physically impossible for her to see the driver. The trial court denied the Defendant's motion finding that there was not "anything impermissible about the name being heard by" Ms. McCall and that the question of whether Ms. Griffin could actually see the driver was an issue of credibility to be decided by the jury.

## II. Trial

At trial, Ms. McCall testified consistently with her testimony at the suppression hearing and added more details about the controlled purchase. Ms. McCall testified that

she had known Ms. Griffin for approximately fifteen years and that she knew Ms. Griffin used cocaine. According to Ms. McCall, she had never purchased cocaine before, and it was Ms. Griffin's idea to "target" Mr. Armstrong. Ms. McCall explained that Ms. Griffin wanted to set up a controlled purchase with Mr. Armstrong because she was mad at him. Ms. McCall testified that Ms. Griffin "just begged" her to participate in the controlled purchase and that she finally relented.

Ms. McCall testified that she arranged with Mr. Armstrong to purchase $150-worth of crack cocaine and that she and Ms. Griffin then contacted agents of the Seventeenth Judicial District Drug Task Force. Agent Childers came to her house a short time before Mr. Armstrong arrived. Agent Childers searched Ms. McCall to ensure that she did not have any money or contraband on her. Agent Childers then equipped Ms. McCall with a transmitter and a recorder. Agent Childers also gave Ms. McCall $150 to make the purchase. In addition to the audio transmitter and recorder, a surveillance team was stationed outside of Ms. McCall's house, and the exchange was recorded.

Ms. McCall testified that Mr. Armstrong told her to meet him outside when he arrived. Ms. McCall waited on her front porch until she saw a dark gray SUV pull up in front of her house. Ms. McCall testified that the passenger window was down and that she recognized Mr. Armstrong. Ms. McCall further testified that she saw the driver but that she did not know who he was. The SUV drove away after the exchange; Ms. McCall returned to the house; she gave the crack cocaine to Agent Childers; and he searched her again for money and contraband.

Ms. McCall identified the Defendant as the driver of the SUV. Ms. McCall admitted that, when she returned to the house, Agent Childers asked her who the driver was and that she said she did not know. Ms. McCall also admitted that Agent Childers told her that he believed the Defendant was the driver. However, Ms. McCall testified that she was basing her identification on her memory of the driver's face. Ms. McCall admitted that she was paid for her work as a confidential informant and that she had previously told the State that she could not identify the driver. Ms. McCall also admitted that the Defendant never spoke during the controlled purchase.

Ms. Griffin testified consistently with her testimony at the suppression hearing as well. Ms. Griffin testified that she worked as a confidential informant from 2006 until around the time of this incident. Ms. Griffin admitted that she was paid for her participation as a confidential informant. Ms. Griffin testified that she and Mr. Armstrong were good friends, that she had spent a lot of time with him, and that she had purchased cocaine from him in the past. Ms. Griffin explained that it was her idea to arrange a controlled purchase from Mr. Armstrong because she and him "had a major falling out" because Mr. Armstrong failed to do some work she had hired him for.

Ms. Griffin testified that she informed Assistant Director Timothy Miller of the Seventeenth Judicial District Drug Task Force after Ms. McCall successfully arranged to buy crack cocaine from Mr. Armstrong. Ms. Griffin further testified that she was inside Ms. McCall's house at the time of the exchange and that she watched the exchange from the bedroom window. Ms. Griffin testified that she could see the SUV and the people inside it. Ms. Griffin explained that she knew the Defendant well enough to visually identify him, that she got a good look at the face of the SUV's driver, and that she could identify the Defendant as the driver.

Agent Childers testified that he set up inside Ms. McCall's house so he could view the controlled purchase and that he brought recording equipment and "controlled funds" with him. Agent Childers estimated that he got to Ms. McCall's house around 2:00 p.m. and that the exchange occurred at approximately 2:15 p.m. Agent Childers testified that he searched Ms. McCall for contraband and money. He then equipped Ms. McCall with a transmitter and a recorder and gave her $150. Agent Childers testified that he could "clearly" see the street from the bedroom window and that he could see two people inside the SUV as he watched the exchange between Mr. Armstrong and Ms. McCall.

Agent Childers testified that he had known the Defendant "[s]ince high school" and had seen him "[c]ountless times." Agent Childers also testified that he knew that the gray SUV belonged to the Defendant's girlfriend at the time and that the Defendant had been seen driving that particular SUV "quite a bit" during the summer of 2011. Agent Childers identified the Defendant as the driver of the SUV.

Agent Childers testified that Ms. McCall returned to the house and handed him the crack cocaine. He again searched Ms. McCall to ensure that she had no contraband or money. Agent Childers testified that Ms. McCall was paid $100 for her participation in the controlled purchase. Subsequent forensic testing by the Tennessee Bureau of Investigation confirmed that the substance Ms. McCall purchased from Mr. Armstrong was .67 grams of cocaine.

Agent Childers admitted that, during the controlled purchase, he identified the driver by using "the wrong street name." Agent Childers stated over the radio to the other agents that the driver was "Squirm," the nickname used by an individual not involved in this controlled purchase. Agent Childers testified that he knew he had made a mistake "as soon as [he] said it" and that he called Assistant Director Miller after the purchase was done to correct himself.

Agent Childers clarified that he did not see Squirm in the SUV that day. Agent Childers also testified that Squirm had distinctive dreadlocks and that the driver of the SUV had short hair like the Defendant. Ms. Griffin testified that she heard Agent Childers say that the driver was Squirm and that when he got off the radio she told him

that she thought the Defendant was driving. Agent Childers also admitted that he said the Defendant's name in front of Ms. McCall. However, Agent Childers explained that, when he said he believed the Defendant was the driver, he was saying that into the audio recorder and not to Ms. McCall.

Assistant Director Miller testified that he was part of the surveillance team for the controlled buy and that he set up a video camera to record the transaction. Assistant Director Miller testified that the SUV drove "directly towards" him, that he could "very easily" see inside the vehicle, and that he "looked directly at" the driver. Assistant Director Miller further testified that he knew the Defendant "by sight" and identified the Defendant as the driver of the SUV. Assistant Director Miller recalled Agent Childers saying that Squirm was driving the SUV and testified that he "immediately" knew that was wrong. Assistant Director Miller testified that he called Agent Childers after the exchange and that Agent Childers "immediately" corrected himself.

Ron Boyd testified on the Defendant's behalf at trial. Mr. Boyd testified that he was the coordinator of student services for the Tennessee College of Applied Technology in Shelbyville. According to his records, the Defendant was enrolled in the college's welding program on July 19, 2011. Mr. Boyd explained that the welding program required 1,296 hours of classroom attendance and that welding classes went from 7:45 a.m. to 2:15 p.m. with only two brief breaks. Mr. Boyd further explained that instructors were required to record attendance and post it daily into an automated system. Mr. Boyd testified that students could be dismissed from the program for excessive tardiness or absences.

Mr. Boyd testified that his records reflected that the Defendant was in welding class until 2:15 p.m. on July 19, 2011. Mr. Boyd clarified that he did not personally see the Defendant that day and did not know if he was actually in the classroom until 2:15 p.m. Mr. Boyd testified that the Defendant's instructor would be the one to actually know if the Defendant was in class that day. Mr. Boyd noted that the Defendant had only been given credit for five hours of classroom time, instead of the full six hours, on the day before and the day after July 19, 2011. Mr. Boyd estimated that it took forty minutes to get from the college's campus in Shelbyville to Lewisburg, where the offenses occurred.

Based upon the foregoing evidence, the jury convicted the Defendant of the lesser-included offenses of facilitation of the sale of .5 grams or more of cocaine and facilitation of the delivery of .5 grams or more of cocaine. The trial court merged the convictions and sentenced the Defendant as a Range II, multiple offender to eight years and six months. This appeal followed.

ANALYSIS

*I. In-Court Identification*

The Defendant contends that the trial court erred in denying his motion to prevent Ms. McCall and Ms. Griffin from making an in-court identification of him. The Defendant argues that Agent Childers's statement that he believed the Defendant was the driver of the SUV was "a suggestive identification procedure" that tainted Ms. McCall's subsequent in-court identification. The Defendant also argues that the pattern jury instruction regarding eye witness identification "simply cannot persist" in light of recent research suggesting "the weakness inherent in eyewitness identification." The State responds that the trial court properly denied the Defendant's motion.

In reviewing a suppression issue, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." State v. Talley, 307 S.W.3d 723, 729 (Tenn. 2010) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). Questions about "the assessment of witness credibility, the weight and value of evidence, and the resolution of evidentiary conflicts are entrusted to the trial court." State v. Meeks, 262 S.W.3d 710, 722 (Tenn. 2008). When the trial court "makes findings of fact in the course of ruling upon a motion to suppress, those findings are binding on appeal unless the evidence in the record preponderates against them." Id. Additionally, a trial court's conclusions of law along with its application of the law to the facts are reviewed de novo without any presumption of correctness. Id.

Most of the Defendant's arguments in the trial court and on appeal regard pretrial identification procedures. However, Ms. McCall testified that she was never shown a photograph of the Defendant or participated in a lineup, and Ms. Griffin testified that she immediately recognized the driver as the Defendant. As such, these arguments are moot. It has long been recognized that "in-court identifications have little testimonial force in view of the fact that the witness is likely to always identify the person at the defense table." Watts v. State, 638 S.W.2d 938, 942 (Tex. Ct. App. 1982). As such, the general rule "is that an in-court identification is inadmissible [only] if it was tainted by an unconstitutional pretrial identification." State v. Davis, 872 S.W.2d 950, 956 (Tenn. Crim. App. 1993).

The Defendant contends that Agent Childers's statement to Ms. McCall that he believed the Defendant was the driver was such an unconstitutional pretrial identification. We disagree. Here, Agent Childers merely stated the Defendant's name, which did not suggest to Ms. McCall the Defendant's physical identity. See State v. Moses, 279 S.E.2d 59, 62 (N.C. Ct. App. 1981). Additionally, we believe that it is highly unlikely that any witness called to testify in a criminal proceeding could testify at trial without first having

the name of the defendant revealed to her. Furthermore, any error in the admission of Ms. McCall and Ms. Griffin's in-court identifications of the Defendant would ultimately be harmless as two other witnesses also identified the Defendant as the driver of the SUV. See Tenn. R. App. P. 36(b) (providing that a final judgment "shall not be set aside" unless the error "more probably than not affected the judgment").

The Defendant also argues that the jury instruction given to the jury on eyewitness identification is inadequate and urges this court to review this case using the pattern jury instruction recently adopted in New Jersey. However, the Defendant made no written request for a special jury instruction regarding eyewitness identification, made no objection to the jury instruction given by the trial court, and did not include this issue in his motion for new trial. As such, this issue is waived. See Tenn. R. Crim. P. 30(a) (requiring request for special jury instructions to be made in writing at the close of evidence); Tenn. R. App. P. 3(e) (providing that "no issue presented for review shall be predicated upon error in the . . . jury instructions granted or refused . . . unless the same was specifically stated in a motion for a new trial"). Accordingly, we conclude that this issue is without merit and affirm the trial court's denial of the Defendant's motion to exclude the in-court identifications made by Ms. McCall and Ms. Griffin.

## II. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his convictions. The Defendant limits his argument to the claim that the State failed to prove his identity as the driver of the SUV. The Defendant argues that Mr. Boyd's testimony was direct proof that "punch[es] a hole in the [S]tate's version of events." The State responds that the evidence was sufficient to establish the Defendant's identity as the driver of the SUV.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence, rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v.

-8-

Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Our supreme court has held that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (internal quotation marks omitted).[1]

Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Dorantes, 331 S.W.3d at 381. The reason for this is because with both direct and circumstantial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

The identity of the perpetrator "is an essential element of any crime." State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006). Here, there was direct evidence establishing the Defendant's identity as the driver of the SUV; four witnesses testified that they saw the Defendant driving the SUV. The Defendant's argument "would have this court accept all plausible inferences in [his] favor while ignoring the plausible inferences arising from the evidence that favor the State." State v. Leath, 461 S.W.3d 73, 104 (Tenn. Crim. App. 2013). The mere fact that "the jury chose not to believe the Defendant's alibi does not cause its verdict to be suspect." Id.; see also State v. Pope,

---

[1] While quoting from Dorantes in his brief, the Defendant cites to the standard from Crawford despite it having been expressly overruled by our supreme court over four years ago and this court's repeated warnings that Crawford "is no longer representative of the current state of the law in Tennessee." State v. Deborah Davis, No. E2011-01519-CCA-R3-CD, 2012 WL 6727512, at *11 (Tenn. Crim. App. Dec. 27, 2012).

427 S.W.3d 363, 369 (Tenn. 2013) (stating that the jury resolves "questions of fact, such as those presented by evidence of alibi or the identity of the perpetrator"). Accordingly, we conclude that the evidence was sufficient to establish the Defendant's identity as the driver of the SUV.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE